MUTUAL AID UNION *v.* BLACKNALL.

Opinion delivered June 18, 1917.

1. LIFE INSURANCE — FACTS CONCERNING APPLICANT — KNOWLEDGE OF AGENT.—Knowledge affecting the rights of the insured, which comes to the agent of the insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies, becomes the knowledge of the company; and the insurance company is bound thereby, in spite of a provision in the policy to the contrary, where the agent who solicited the business was charged with the duty of asking the applicant questions concerning his physical condition.

2. LIFE INSURANCE—APPLICATION—KNOWLEDGE ACQUIRED BY AGENT.— A life insurance company will be bound under a policy of life insurance, where the applicant and insured made false statements concerning his physical condition, where the agent soliciting the insurance was also charged with the duty of writing the data concerning the applicants' physical condition, and where the agent, in the course of the examination, learned the applicant's true condition.

3. INSURANCE—FRAUD—COLLUSION BETWEEN AGENT AND APPLICANT.— If an agent, in collusion with the applicant, even though acting within the apparent scope of his authority, perpetrates a fraud upon the insurance company by making false and fraudulent representations upon which the insurance is obtained, such fraud will violate the policy.

Appeal from Logan Circuit Court, Southern District; *James Cochran,* Judge; affirmed.

*J. V. Walker* and *Ratterree & Cochran,* for appellant.

1. The court erred in giving instruction No. 8 for the plaintiff, and in refusing No. 13, asked by defendant. The knowledge of the agent must be actual and not implied. The burden was on appellee to show actual knowledge on the part of the agent. 135 Am. St. 160; 12 *Id.*

801; 14 R. C. L. pp. 1159, 1167, 1173; 65 Ark. 54; 65 *Id.* 62; 25 Cyc. 856; 60 S. W. 576; 111 Fed. 19; 102 Ark. 146.

Where the applicant informs the agent relative to his age and health, then the company is bound, but such knowledge must be based on information received by the agent in the performance of his duties at the time the application is made or during the negotiations for the policy. 65 Ark. 63; 102 *Id.* 146; 81 *Id.* 510; *Ib.* 207; 14 R. C. L. 1159; Ann. Cases, 1913 A. 850.

It was not shown that the insured made correct statements as to his age and health to the agent, and appellant was not chargeable with the notice or knowledge of the soliciting agent from observation. 25 Cyc. 860-865; 14 L. R. A. (N. S.) 279.

2. The agent was a mere soliciting agent, and had no authority to waive a breach of warranty, or one whose knowledge was the knowledge of the company, except under special circumstances. 25 Cyc. 860 to 865; 102 Ark. 146; 81 *Id.* 510, 207; 65 *Id.* 63. Appellee can not urge the knowledge of the company as a waiver unless it be shown that its knowledge was as full and complete as that of the insured. 14 R. C. L. 1167; 107 U. S. 485; 111 Fed. 31.

3. If the insured and agent both knew of the false statements, then collusion is presumed and the burden was on appellee to overcome the presumption. 77 Am. St. Rep. 34; 14 L. R. A. (N. S.) 279 and notes. The law presumes that the agent wrote the answers correctly as directed by the insured, and appellee by introducing the application in evidence has affirmed its genuineness. Jones on Ev. (2 ed.), § § 48 and 50. See also 67 Ark. 584; 241 U. S. 613; 14 L. R. A. (N. S.) 279.

4. A policy procured by false and fraudulent statements and representations is not binding. 103 Ark. 201; 74 *Id.* 1; 72 *Id.* 620; 58 *Id.* 528; 25 Cyc. 798, 801.

5. The insured made the application; it was read to him; the questions were asked him and he had the opportunity to read it. 71 Ark. 185; 70 *Id.* 572; 9 Cyc. 389, 390. He accepted the policy without objection and

thereby ratified his own application and is bound by its contents. 14 R. C. L. 1177, § 351; 74 Am. Dec. 459. If he did not sign the application, or authorize the agent to sign for him, and has not adopted or ratified it, there was no binding contract. 25 Cyc. 712, 715; 12 Am. St. Rep. 801. A false application is a fraud on the company. 32 L. R. A. 989; 47 Am. St. Rep. 336.

6. There was error in other instructions given and refused. 58 Ark. 528; *Ib.* 277; *Ib.* 565; 74 *Id.* 1; 72 *Id.* 621; 103 *Id.* 201; 25 Cyc. 789 to 810.

7. Incompetent testimony was admitted and the verdict is contrary to the evidence.

*J. H. Evans,* for appellee.

1. The burden of proof, on the whole case, was on the defendant. Kirby's Digest, § 3106.

2. All the writing in the application was done by the same person, and this was not Dr. Blacknall. It was done by Barnett, the agent of appellant. He filled out all the blanks and signed it. He inquired of the applicant his age and the condition of his health. True answers were given and the applicant can not be held responsible for false answers written by appellant's agent. There is a total failure of proof that the applicant made any false answers as to age or disease. If the truth was told the agent and it was incorrectly written by mistake, or fraud, by such agent, the company would be liable . The knowledge of the agent is regarded as the knowledge of the company. 102 Ark. 151.

3. If there was any fraud, it was on the part of the agent of the company. Where a policy is issued with knowledge of the facts which would render it void, there is a waiver of the grounds of forfeiture. 56 Ark. 62; *Ib.* 11; 1 Bacon Life & Acc. Ins., § 274. In the light of the law as thus laid down, instruction No. 8 was properly given and No. 13 refused properly. There is no error in the other instructions given and refused.

4. If there was any incompetent testimony admitted, it is not abstracted, nor was it prejudicial.

WOOD, J.   Appellant is a mutual aid society (hereafter called society), doing an insurance business in Arkansas on the assessment plan.   Appellee is the beneficiary in a certificate of insurance issued by the society insuring the life of Dr. Blacknall.   After the death of Blacknall, the appellee instituted this suit against the society, and J. W. Walker and J. E. Felker, sureties on the society's bond, to recover the sum of $175 alleged to be due her on the certificate of insurance, and also 12 per cent. damages as penalty for the refusal to pay, and for a reasonable attorney's fee.

The society denied liability on the ground that the insured, Blacknall, perpetrated a fraud on the society by falsely stating in his written application for membership that he was only 60 years of age, and that he was not suffering from either kidney trouble or rheumatism, when in truth and in fact Blacknall was 66 years of age, and was at that time, and for a long time prior thereto, had been afflicted with both kidney trouble and rheumatism; that the written application was a part of the contract of insurance, and in the written application was a provision to the effect that all the statements contained therein were warranted to be true; that under the rules and by-laws of the society, persons over 60 years of age, or those afflicted with kidney trouble or rheumatism, or both, were not eligible to membership in the society.

The appellee introduced the written application of Blacknall and the certificate of membership issued to him in which it was stated that the application was a part of the contract and a warranty by the member.   In the application, the age of Blacknall is stated as 60 years.   And in the application the question is asked, "Has the applicant any of the following diseases?" naming, among others, "kidney" and "rheumatism," and the answer is "No."   The application is signed as follows:  "Dr. G. T. Blacknall, Applicant," and his name is endorsed on the back of the application in the same way.   The application was dated the 22d of April, 1914.

The appellee testified that her husband, Dr. G. T. Blacknall, was suffering with kidney trouble when he made the application for membership; that he had Bright's disease; had been suffering with it for three or four years. He also suffered with rheumatism. He was so ill with these diseases that it had wrecked his mind. Dr. Blacknall died on the 12th of May, 1915. In April, 1914, on his nearest birthday, he was 66 years old. He lived about thirteen months after he became a member. The appellee usually attended to the matter of paying the assessments and keeping them paid as they were called for.

Appellant contends that since the appellee conceded that Dr. Blacknall was over sixty years of age and afflicted with rheumatism and kidney trouble, that the answers contained in his application were false, and that the contract of insurance was thus obtained through fraud and was therefore void.

Appellee, on the other hand, contends that Dr. Blacknall did not give false answers to the questions propounded in the application; that Dr. Blacknall gave the correct answer as to his age, and that the soliciting agent of the society who wrote down the answers and filled out the application, and who returned the same to the society, knew at the time that Dr. Blacknall, on account of his mental and physical condition, was not an insurable risk.

The undisputed evidence shows that the answers to the questions were written in the application by the society's soliciting agent, Barnett; and the daughter of Blacknall, who was present at the time, testified that Barnett asked her father how old he was, and that he replied that he was sixty-six. There was testimony also tending to prove that when the application was received by the appellee, she noted and commented upon the fact that the name was signed to the application as "Blackull," instead of Blacknall, and she testified that the name was not in her husband's handwriting. There was also other

testimony tending to prove that the signature to the application was not written by G. T. Blacknall.

B. V. Sively testified that he was the soliciting agent for the society at Booneville in 1812, and solicited Dr. Blacknall to become a member of the society. He explained to him that no one could become a member who was over sixty years of age, and Dr. Blacknall told witness that he was too old. Witness discussed the plan of the society with Dr. Blacknall, who told witness that he could not become a member because he was too old.

Among others, the court gave the following instruction:

"(8) The fact, if it be a fact, that Dr. Blacknall had rheumatism and Bright's disease at the time of making application for insurance in this case, will not bar recovery by the plaintiff if his condition was such that Barnett the agent of defendant, knew that Blacknall was laboring under the disabilities of physical and mental diseases."

The court refused appellant's prayer for instruction No. 13, which is as follows: "I charge you that in order to bind the defendant, Mutual Aid Union, with the knowledge of its agent, Barnett, relating to the condition of health of the insured, Blacknall, it is not enough for the plaintiff to show that said agent could have known that said insured was afflicted with rheumatism and Bright's disease, but the plaintiff must go further and show by the preponderance of the evidence that said agent did know said facts at the time he received the written application of said insured."

(1) In 14 R. C. L., p. 1159, section 340, it is said: "It is usually held that in the absence of policy provisions to the contrary, knowledge affecting the rights of the insured, which comes to an agent of an insurance company while he is performing the duties of his agency in receiving applications for insurance and delivering policies, becomes the knowledge of the company." This is the doctrine of our court as announced in several cases. *Insurance Co.* v. *Brodie*, 52 Ark. 11-14; *Phoenix Ins. Co.* v.

*Flemming,* 65 Ark. 54; *Mutual Reserve Fund Life Assn.*
v. *Farmer,* 65 Ark. 581; *Franklin Life Ins. Co.* v. *Galli-
gan,* 71 Ark. 295; *Capital Fire Ins. Co.* v. *Montgomery,*
81 Ark. 508, and cases cited; *Gray* v. *Stone,* 102 Ark.
146-151.

The testimony in the case at bar showed that the ap-
plication for insurance was taken by the society's solicit-
ing agent, one Barnett, who had authority to take the ap-
plication and forward same to the society. There was a
membership fee of $1.25, $1.00 of which went to the agent
who took the application. In the application there is this
recital: "It is expressly agreed by the applicant that no
agent or other person has any authority to waive or dis-
pense with true answer in writing hereon to any of the
questions above set out, and the said Mutual Aid Union
shall not be bound, nor shall any of the provisions of the
certificate to be issued on this application be waived or
affected by any act or statement to or by any agent or
other person which is not contained in the application."

It is the doctrine of our cases that, notwithstanding
such recitals in an application or policy, an insurance
company is bound by the conduct of its soliciting agent
acting within the apparent scope of his authority. Any
knowledge or information coming to him during the
course of his employment as such agent will bind his prin-
cipal, the society. See *People's Fire Ins. Co.* v. *Goyne,*
79 Ark. 315; *Capital Fire Ins. Co.* v. *Montgomery, supra,*
and cases cited.

"The modern authorities," says Mr. Bacon, "are
practically unanimous in holding that where the agents
make out applications incorrectly, notwithstanding the
applicant has stated all the facts correctly, the errors will
be chargeable to the insurer, and not to the insured."
Bacon on Life & Accident Ins., vol. 1, section 274.

Now, the rule might be different where the agent has
no other duties to perform than that of merely soliciting
insurance, and where it is not incumbent upon him to ask
any questions of the applicant for insurance, or to write

down the answers to questions concerning his physical condition and other matters in order to elicit information for the use and benefit of the company in determining whether or not it will issue its policy.  But we are not called upon to decide that question, for, under the undisputed facts of this record, it was strictly in line of the agent's duty, not only to solicit the insurance, but to make out the application, to ask questions of the applicant concerning his physical condition and to write down the answers to these questions, and then, after receiving these answers, to inform the society as to whether or not he advised the acceptance of the risk.  The form of the application, on its face, recites: "If applicant answers 'yes' to any of the above questions" (that is, as to whether or not he has certain diseases, naming them) "agent will please give physical defect in full on this line."  The application also requires the solicitor to answer the following question:  "Do you advise the acceptance of this risk?"

(2)  The agent, in this case, had something more to do than simply to solicit people to become members of the society.  Whatever knowledge, therefore, this agent had concerning Blacknall's physical and mental condition, derived from his observation of him while he was engaged in the business of asking the questions which he was required to ask on filling out his application, was knowledge obtained in the course of his employment, and by such knowledge the society was bound.

The testimony of Mrs. Blacknall showed that, on account of the malignant diseases that had preyed upon her husband for two or three years before the application for insurance, he was a "physical and mental wreck."  For the last two or three years of his life, "he was affected with what is called 'creeping paralysis'—with the kind of paralysis that his tongue would be thick and heavy and his eyes affected.  His mental and physical condition was such that any one who met him and talked with him would know it."

In view of the above testimony, the court did not err in giving instruction No. 8, and in refusing prayer of appellant for instruction No. 13. These instructions were to the same purport. They, in effect, told the jury that the appellant society would not be liable unless the soliciting agent, Barnett, knew at the time he took the application of Blacknall that the latter was afflicted with diseases which made him an unfit subject for insurance, and therefore ineligible to membership in the society.

The testimony of Mrs. Blacknall and of witness Castleberry was direct and positive to the effect that Dr. Blacknall, for two or three years prior to his death, was wrecked mentally and physically, and this was the only direct testimony as to his mental and physical condition at the time of the application. And the testimony of Mrs. Blacknall that his "mental and physical condition was such that any one who met and talked with him would know it," was undisputed. Nevertheless, the court, in instruction No. 8, submitted to the jury the issue as to whether or not the agent had knowledge of Blacknall's mental and physical condition at the time he took the application. This instruction was certainly as favorable to appellant as it was entitled to under the evidence.

Having given instruction No. 8, the court did not err in refusing prayer No. 13, which was virtually to the same effect, making the liability of appellant depend upon whether or not the agent had knowledge of Blacknall's mental and physical condition, and leaving the issue of fact as to whether or not he had such knowledge to be determined by the jury.

This is the second appeal in this case. (See *Mutual Aid Union* v. *Blacknall,* 123 Ark. 377). On the former appeal, the cause was reversed for error of the trial court in refusing to submit to the jury the issue as to whether or not Blacknall, at the time of the application, perpetrated a fraud on the society in permitting the agent to write in the application an incorrect statement as to Blacknall's age. We held that the testimony of Sively,

in that record, which is substantially the same as it is in the present, was sufficient to entitle appellant society to have the issue of fraud on the part of Blacknall, concerning the statement of his age, submitted to the jury. The circuit court, on the second trial, submitted the issue as to whether Blacknall falsely stated and represented that his age was sixty, and also whether he falsely stated that he was not suffering from kidney trouble and rheumatism. The court told the jury that if Blacknall, at the time he made his application, knew that by reason of his age he was not entitled to become a member of the society, their verdict should be for appellant; also that if he stated that he was not suffering from kidney trouble and rheumatism, that the society would not be liable.

The instructions submitting to the jury the issue of fact as to whether or not Blacknall falsely stated to the society's agent that he did not have kidney trouble and rheumatism, when in truth and in fact he was afflicted with these diseases, were really more favorable to appellants than they were entitled to under the undisputed evidence, for there is no testimony in the record tending to prove that Blacknall made any false statement whatever. The only testimony in the record showing that he made any statements at all is to the effect that he made a truthful representation concerning his age, but that the agent made a false statement of it in the application.

(3) It is well settled that if the agent, in collusion with the applicant for membership, even though acting within the apparent scope of his authority, perpetrates a fraud upon the society by making false and fraudulent representations upon which the insurance is obtained, such fraud will vitiate the policy. See *Triple Link Mut. Ind. Assn.* v. *Williams,* 121 Ala. 138; *Mudge* v. *Supreme Lodge I. O. O. F.,* 149 Mich. 467, 112 N. W. 1130, 14 L. R. A. (N. S.) 279. But there is no evidence here tending to prove that Blacknall colluded with the agent to defraud the society by making false representations as to his physical condition.

The undisputed evidence shows that Blacknall did not sign his name to the application at all; that the name was written "Dr. Blackull," instead of "Blacknall," and that it was not written and signed in the manner in which Dr. Blacknall always signed his name to instruments. The making of this application was the manipulation entirely of the agent, Barnett. The testimony does not discover that Blacknall really had any part or lot in it as it was framed and sent to the society. The evidence shows affirmatively that he answered the one question, as to his age, and answered that correctly, but that the agent wrote a false answer. It is not shown that he answered any other question, or that he signed the application. The burden was upon the society, under the issues raised by the pleadings, to show fraud. It will not be presumed. As we have stated, the uncontroverted evidence is that the signature to the application was not that of Dr. Blacknall.

Therefore, it appears that whatever fraud was perpetrated upon the society, was the fraud of its over-zealous agent, who, notwithstanding his knowledge of Dr. Blacknall's aged and decrepit condition, wrote the application for insurance and sent it to the society, which the latter accepted and entered into a contract of insurance with Blacknall, with which Blackall fully complied by the payment of his assessments.

The issue of fraud concerning Blacknall's age was submitted to the jury in conformity with the opinion of this court on the former appeal. There was really no testimony in this record to justify the court in submitting any issue of fraud on the part of Dr. Blacknall in the matter of representations as to his physical condition. The court, nevertheless, submitted this issue to the jury, and upon instructions which were certainly in nowise prejudicial to appellants.

The testimony of Mrs. Blacknall, to the effect that Dr. Blacknall's mental and physical condition was such that "any one who met him and talked to him would know

it," if incompetent, was not prejudicial. While this testimony was rather in the nature of an opinion by the witness, yet she had, in detail, before expressing this opinion, testified as to what his physical condition and appearance were and as to the manner in which he was affected by the diseases with which he was afflicted. Therefore, no possible prejudice could result in the witness stating her conclusion that any one who met and talked with him would know his mental and physical condition.

There is no reversible error in the record, and the judgment is, therefore, affirmed.