AETNA LIFE INSURANCE COMPANY *v*. ROUTON.

4-7331                                179 S. W. 2d 862

Opinion delivered April 17, 1944.

*Seth C. Reynolds* and *Owens, Ehrman & McHaney,* for appellant.

*Head & Shaver,* for appellee.

HOLT, J.   March 6, 1942, appellant, insurance company, issued a policy of insurance upon the life of Dr. B. C. Routon, in the amount of $5,000, payable upon his death to appellee, Carrie F. Routon, his wife. The insured, Dr. Routon, died on July 19, 1942. Appellant admitted the issuance of the policy, acceptance of the premium and proof of death. Liability on the policy was denied on the grounds that the issuance of the policy

had been procured by the false and fraudulent answers of the insured in the application as to the state of his health, and that the insured was not in good health when the policy was delivered as required by the application and the policy itself. The policy was non-medical—that is no medical examination of the applicant was required —and by its terms the application was made a part thereof. The policy provided: (4) "This policy shall not become effective until the first premium upon it is paid during the good health of the insured, and when so paid this policy shall be deemed effective from the date of issue as shown on the first page hereof." (13) "All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the policy or be used in defense to a claim under it unless it is contained in the written application herefor and unless a copy of such application is attached hereto when issued." (14) "This policy and the application herefor, a copy of which application is attached hereto and made a part hereof, constitute the entire contract between the parties hereto," etc.

The application signed by the insured contained this provision: "I hereby certify that the foregoing answers and statements are made by me and are complete and true, that they are correctly and fully recorded, and that no material circumstances or information has been withheld or omitted concerning my past and present state of health and habits of life. . . . and agree . . . (2) that no such policy shall become effective until the first premium upon it is paid during the good health of the insured and within 60 days from the date hereof; and (3) that no person other than the president, a vice-president, secretary or assistant secretary of the company can act for it to make, modify or discharge a contract or to waive any of the company's rights or requirements and that none of these acts can be done by the agent taking this application."

The questions which appellant contends the insured, Dr. Routon, answered falsely and fraudulently are:

"9.a. Have you any infirmity or deformity? . . . Disease of the heart? . . ." Ans. "No." "9.b. What other illness, disease, or injuries have you suffered from?" Ans. "Appendix removed, 1932. Dr. Connor, Hope, Ark. Tonsils removed, 1940. Dr. Chester McHenry, Oklahoma City. Both complete recovery." "9.d. Have you had periodic or occasional health examinations?" Ans. "No." "9.e. Name any impairments ever found." Ans. "None."

This suit was brought to enforce payment of the policy and was defended upon the grounds set out above. Upon a jury trial, there was a verdict for appellee, and from the judgment comes this appeal.

The material facts presented are: The insured, Dr. Routon, at the time he signed the application for the policy of insurance in question, and at the time the policy was delivered to him, was suffering from high blood pressure, or hypertension, and as a result of this disease, he died of a cerebral hemorrhage a little over four months after the issuance of the policy to him. In January, 1941, Dr. Routon was examined for a commission in the United States Army, which was refused upon a showing of high blood pressure, or hypertension. Six examinations were made. "1-13-41 a. m.—170/112, p. m.—160/110; 1-14-41 a. m.—170/112, p. m.—176/120; 1-15-41 a. m.—170/112, p. m.—170/116." He was found incapacitated for active duty because of "(1) hypertension, arterial, moderate; (2) overweight sixteen pounds above maximum allowance for height and age."

At the time Dr. Routon was issued the policy, he was 29 years of age and was the local medical examiner for appellant company, and had been for some time prior thereto. He knew that the appellant company required him, as its examining physician, among other things, to submit to the home office urinary specimens of all applicants who gave present or past history of high blood pressure. The book of instructions furnished Dr. Routon by appellant contained the following provision: "Requirements for home office specimen: A urinary specimen must be sent to the home office in the following

instances: . . . All applicants who give history, present or past, of hypertension. . . ." Had the company—appellant—known that Dr. Routon had high blood pressure, it would not have issued the policy.

Appellee in fact makes no contention that the insured, Dr. Routon, was in good health at the time of his application and the delivery of the insurance, but she relies for recovery upon the claim that Dr. Routon made truthful answers to J. V. Clark, appellant's insurance agent, who took Routon's application, and that Clark's knowledge binds appellant. Appellee says: "Here, then, was a case wherein the district agent, Clark, denied any knowledge of the suffering of Dr. Routon from high blood pressure; any knowledge of his having been turned down by the Army therefor, coupled with excess weight of sixteen pounds; yet, on the other hand, there is ample testimony by the beneficiary and Dr. Routon's assistant (Miss Nora Bowman) directly contradicting the testimony of Mr. Clark."

We agree with appellee that there was substantial evidence to the effect that appellant's agent, Clark, knew of Dr. Routon's condition, that he was not an insurable risk, and that he, Clark, wrote false answers in the application. However, we cannot agree that appellee can recover on the facts presented by this record.

Appellant contends, and we think correctly so, that the policy here in question is void and there can be no recovery for the reason that the insured's conduct and actions in procuring the policy amounted to a fraud upon appellant company. It must be remembered that the insured, Dr. Routon, at the time he knew false answers to material questions in his application were being made by Clark, was the trusted representative, or medical examiner, in the locality in which he lived, for appellant. In no sense was he dealing with appellant at arms length. If, as contended by appellee, appellant's agent, Clark, knew the insured's condition and knew that the answers which he, Clark, wrote in the application were false, yet, the fact remains that Dr. Routon also knew that these answers were false and material, that he was not an in-

surable risk, and that appellant would refuse to issue the policy in question if it knew that he was suffering from high blood pressure. In this event, there was both fraud and collusion on the part of the insured and Clark, appellant's agent, in procuring the insurance, which would void the policy. As above indicated, Dr. Routon was appellant's medical examiner. He was not misled, and could not have been misled by anything the agent, Clark, may have told him. He knew that he was uninsurable without disclosing facts appellant required of him and his medical knowledge and experience told him were material information for appellant to have before exercising its discretion to issue, or withhold the policy. He was not an innocent, uninformed layman. The conclusion is certain that Dr. Routon either concealed the information from Mr. Clark or colluded with him to conceal it from appellant. If the former, Dr. Routon was guilty of intentional fraud, and if the latter, he was guilty of both fraud and collusion, and in any event, appellee as beneficiary, who stands in his shoes, could not profit by the insured's fraud, or the fraud of the agent, Clark, of which Routon had full knowledge.

The general applicable rule is stated in 32 C. J., p. 1290, § 516, as follows: "Where the fact is correctly stated by the applicant but a false answer is written into the application by the agent of the company without knowledge or collusion upon the part of the applicant, the company is, according to the generally accepted rule, bound. But on the other hand, if the agent in collusion with the applicant makes the false and fraudulent representations upon which the insurance is obtained, the fraud will vitiate the policy, even though the agent is acting within the apparent scope of his authority." In support of the text, there is cited one of our earlier cases, *Mutual Aid Union* v. *Blacknall*, 129 Ark. 450, 196 S. W. 792, wherein this court said: "It is well settled that if the agent, in collusion with the applicant for membership, even though acting within the apparent scope of his authority, perpetrates a fraud upon the society by making false and fraudulent representations upon which

the insurance is obtained, such fraud will vitiate the policy."

In 29 American Jurisprudence, p. 645, § 847, we find this language: "The rule denying an insurer the right to assert the falsity of answers to questions contained in an application for insurance, and written into the application by the insurer's agent after the questions were correctly answered by the applicant, presupposes the continuance of good faith on the part of the insured; this rule is not applicable if there was any taint of fraud on the part of the insured in allowing incorrect answers to stand without objection," and in § 853 following, "If the insured is a party to the fraud of an insurance agent or medical examiner, he will not be allowed to profit thereby; and the insurer is not estopped by the knowledge or conduct of its agent or medical examiner in such case from asserting the falsity of an answer in the application or medical report resulting from such fraud or deception."

In the recent case of *Union Life Insurance Company* v. *Johnson,* 199 Ark. 241, 133 S. W. 2d 841, this court quoted with approval from 32 C. J., p. 1333, as follows: "Where the facts have been truthfully stated to its agent, but by his fraud, negligence, or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, *and there is no fraud or collusion upon the part of insured. . . .*"

We conclude, therefore, that on account of the fraudulent conduct and actions of the insured in procuring the policy of insurance in question, there can be no recovery on the part of appellee as beneficiary. Accordingly, the judgment is reversed, and the cause dismissed.

MCFADDIN, J., disqualified and not participating.