Dollie GILCREAST *v.*
PROVIDENTIAL LIFE INSURANCE COMPANY

CA 84-148                                   683 S.W.2d 942

Court of Appeals of Arkansas
Division I
Opinion delivered February 13, 1985

*Simes & Associates,* by: *L.T. Simes, II,* for appellant.

*Hoofman & Bingham, P.A.* for appellee.

TOM GLAZE, Judge. This appeal involves a hospital medical surgical policy issued by appellee to the appellant. Almost three years after the issuance of the policy, appellant was admitted into the hospital and had a brain tumor surgically removed. Appellee denied appellant benefits under her policy claiming that her surgery was the result of a pre-existing condition excluded under the policy. Appellant filed suit against appellee contending she had disclosed information regarding her brain tumor to appellee's soliciting agent when she applied for the policy. She alleged the agent's knowledge of her condition was imputed to the appellee, and as a consequence, appellee was obligated under the policy. At trial, the jury returned a verdict for appellee.

We must reverse because the trial court incorrectly instructed the jury. The court found that Robert Reynolds was appellee's soliciting agent and instructed the jury that Reynolds' knowledge of appellant's previous condition, if any, *could not* be imputed to the appellee. Appellant had proffered an instruction stating that such knowledge *is* imputed. In *Jackson* v. *Prudential Insurance Company of America,* 564 F.Supp. 229, 234 (W.D.Ark. 1983), the court reviewed a long line of Arkansas cases which hold that the knowledge obtained by an insurance agent, even a soliciting agent, in relation to information requested on the application for insurance is imputed to the insurance company, or that the company is estopped from denying coverage when the agent obtained from the applicant the correct information. *See also Reliable Life Insurance Co.* v. *Elby,* 247 Ark. 514, 446 S.W.2d 215 (1969); and *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, 196 S.W. 792 (1917). In discussing

the foregoing rules, the Supreme Court in a number of the cases cited in *Jackson* also discussed those exceptions or rules that apply when the insurance company is not bound by information received by its soliciting agent. E.g., *Continental Insurance Companies v. Stanley*, 263 Ark. 638, 569 S.W.2d 653 (1978); *Holland* v. *Interstate Fire Insurance Co.*, 229 Ark. 491, 316 S.W.2d 707 (1958); *Business Men's Assurance Co.* v. *Selvidge*, 187 Ark. 1040, 63 S.W.2d 640 (1933). For example, the Supreme Court in *Aetna Life Insurance Co.* v. *Routon*, 207 Ark. 132, 179 S.W.2d 862 (1944), stated the general rule and its exception as follows:

> "Where the fact is correctly stated by the applicant but a false answer is written into the application by the agent of the company *without knowledge or collusion upon the part of the applicant,* the company is, according to the generally accepted rule, bound. But on the other hand, if the agent in collusion with the applicant makes the false and fraudulent representations upon which the insurance is obtained, the fraud will vitiate the policy, even though the agent is acting within the apparent scope of his authority."

*Id.* at 137, 179 S.W.2d at 864 (quoting 32 C.J. § 516) (emphasis supplied).

The *Routon* court also announced another settled exception to the general rule that binds the insurer as follows:

> "The rule denying an insurer the right to assert the falsity of answers to questions contained in an application for insurance, and written into the application by the insurer's agent after the questions were correctly answered by the applicant, presupposes the continuance of good faith on the part of the insured; *this rule is not applicable if there was any taint of fraud on the part of the insured in allowing incorrect answers to stand without objection. . . ."*

*Id.* at 138, 179 S.W.2d at 864 (quoting 29 Am. Jur. § 847) (emphasis supplied).

In the instant case, the appellant claims she informed appellee's agent, Reynolds, that she had prior surgery for a brain tumor in 1976 and that Reynolds said, "We are just going to ignore it." She said that Reynolds completed her application and she signed it. Appellant claims that at Reynolds' instruction, she marked "no" on the application where it asked if she had been confined in a hospital within the past five years. Reynolds denied that appellant gave him any information concerning a prior surgery or hospitalization. Both appellant and Reynolds did agree that appellee mailed appellant a follow-up letter asking appellant to verify the information on her application, a copy of which was enclosed with the letter. Appellant signed on a line indicating that the information in the application was *incorrect* and returned the form to appellee. Appellee sent appellant a second letter, asking how and why the information/application was incorrect. Appellant erased her signature from the form and signed the line that indicated the information was *correct*. She made this change, she claims, because Reynolds had told her to ignore her prior surgery and hospitalization when they initially completed the application. She testified, "I figured if it was good at first it was still good."

In view of the foregoing law and facts, factual questions existed concerning whether appellant had informed Reynolds about her prior surgery and hospitalization and even if she had, whether, on the evidence of this case, appellee was bound by Reynolds' knowledge. In any event, the jury was precluded from considering or deciding these questions by the trial court's erroneously instructing them that Reynolds' knowledge could not — under any circumstances — be imputed to the appellee. As we previously noted, that instruction was wrong and because of that error, we must reverse this cause for a new trial.

We find appellant's other arguments without merit, but we do briefly address the one concerning the policy's incontestable provision since this cause is returned for a new trial. This provision provides that after two years from the effective date of the policy, no misstatement, except fraudulent misstatements made by the applicant, shall be

used to void the policy or to deny a claim. It also provides that no claim for a disease or condition not specifically excluded shall be reduced or denied on the ground that it existed prior to the effective date of the policy. The appellant argues that because of the incontestable provision, the claim must be paid as a matter of law because the disputed loss clearly occurred more than two years after the effective date of the policy. Appellant contends there was no misstatement and certainly no fraudulent misstatement on her part so the incontestable provision applies to the facts at hand. However, the appellant overlooks the fact that the appellee asserted fraudulent misrepresentation as a defense to appellant's claim, and the trial court properly instructed the jury on appellee's burden of proof with respect to that defense. Whether fraud had occurred, thereby effectuating the incontestable provision, was a fact question for the jury and was properly presented to them for resolution.

Reversed and remanded.

CORBIN, J., agrees.

MAYFIELD, J., concurs.

MELVIN MAYFIELD, Judge, concurring. I concur in the reversal and remand of this case but want to make my position clear on a couple of points.

The trial court's instruction No. 10 told the jury that knowledge obtained by appellee's soliciting agent could not be imputed to the appellee. This was objected to on the basis that it was an incorrect statement of the law. In addition, the court refused to give appellant's requested instruction "E" which would have told the jury that the agent's knowledge of appellant's preexisting medical condition was imputed to the appellee. I think it may be important to know why it was error to give the appellee's instruction and to refuse the appellant's.

Although some cases are explained on the basis of waiver, *Reliable Life Ins. Co.* v. *Elby*, 247 Ark. 514, 446 S.W.2d 215 (1969), or estoppel, *Interstate Fire Ins. Co.* v.

*Ingram,* 256 Ark. 986, 511 S.W.2d 471 (1974), I think the real basis is explained in *Jackson* v. *Prudential Ins. Co. of America,* 564 F.Supp. 229 (W.D. Ark. 1983), as follows:

> The distinction . . . is that . . . the insurance agent, whether a general or soliciting agent, had been given authority by the company to obtain the information necessary to complete the application, and to accept the "knowledge" obtained in doing so. That is his "job," so anything he learns in relation thereto is imputed to the company.

*Id.* at 235. *See also M.F.A. Mutual Ins. Co.* v. *Jackson,* 271 F.2d 180 (8th Cir. 1959); *DeSota Life Ins. Co.* v. *Johnson,* 208 Ark. 795, 187 S.W.2d 883 (1945); *Mutual Aid Union* v. *Blacknall,* 129 Ark. 450, 196 S.W. 792 (1917).

This reason may be important in other respects but I mention it in view of the majority opinion's characterization of *Aetna Life Ins. Co.* v. *Routon,* 207 Ark. 132, 179 S.W.2d 862 (1944), as an "exception" to the rule expressed in *Jackson.* I do not regard *Routon* as an exception. That case simply holds that "if the agent in collusion with the applicant makes the false and fraudulent representations upon which the insurance is obtained, the fraud will vitiate the policy, even though the agent is acting within the apparent scope of his authority." This issue of collusion was not raised in the first trial, but if it is to be an issue on retrial, I think it should be understood that the rule in regard to collusion is not an exception to the rule expressed in *Jackson* in regard to the imputation of the agent's knowledge to his company. Both rules may be operative in the same case. *See Mutual Aid Union* v. *Blacknall, supra.*

Also, I want to note that the appellant did not admit that she signed the appellee's first letter on the bottom line to indicate that the information in the application was incorrect. The appellant and her husband each denied that appellant ever signed that line; they both testified that she signed the top line only. Appellant said she signed the top line because she had told the agent about her prior surgery and he had said to ignore it. She said "he was selling it and I

was buying it," and "I figured if it was good at first it was still good."

This brings me to my second point. The appellant testified that at the time she made the application for the insurance she had no symptoms of her previous illness and that, three years later, when she went back to the doctor she "didn't think it was nothing like that again." In view of the appellant's testimony and the possible new issue of fraud by the agent in collusion with the appellant, I think the appellant's husband should be permitted to testify that appellant told the agent that the doctor told her the first brain tumor was not malignant. Objection to that testimony was sustained in this trial. On retrial it should be admissible, not to prove the truth of the matter asserted, but to show that the statement was made. For that purpose I do not think it is hearsay, and it would be relevant on the issue of fraud by the agent in collusion with the appellant. Of course, the appellant's testimony that the doctor made that statement to her would be admissible on the issue of her fraud.