CONTINENTAL CASUALTY COMPANY *v.* JOHN R. CAMPBELL

5-4224                                              414 S. W. 2d 872

Opinion delivered May 22, 1967

*Mobley & Bullock,* for appellant.

*Gordon & Gordon,* for appellee.

J. FRED JONES, Justice. This is an appeal from a judgment of the Pope County Circuit Court wherein a jury was waived and the trial judge, sitting as a jury, rendered judgment in favor of John R. Campbell on a health and accident insurance policy issued by Continental Casualty Company. Continental is the appellant here and designates one point for reversal, as follows:

"There was no substantial evidence upon which the court could base its decision in favor of appellee, John R. Campbell."

In appeals to this court from judgments of Circuit Courts where the trial judge sits as a jury or enters judgment upon a jury verdict, the "substantial evidence" rule is so firmly established in this state that citation of prior decisions is not necessary. We now examine the evidence as to its substantial nature.

On February 23, 1961, appellee Campbell made application for a health and accident insurance policy through appellant's agent on a written form. The questions printed on the application form were read to appellee and his answers to the questions were written down by the agent. Questions eight and nine in the application, and the answers thereto, were as follows:

"8. Have you to the best of your knowledge and belief ever had abnormal blood pressure, ulcers, tuberculosis, appendicitis, hernia , diabetes, cancer syphilis, goiter, paralysis, sciatica, arthritis, rheumatism, any disorder or disease of the mental, nervous, genito-urinary or digestive systems, rectum, eyes, back, spine or heart? (If so, give nature, date, period of disability, name of doctor and result)——No

"9. Have you been under observation or had medical or surgical advice or treatment, or been hospital confined during the past 5 years?——No (If so, give dates, ailment, duration and result)"

A policy was issued by appellant to appellee and became effective on March 9, 1961. Appellee continued his work as a carpenter until November 1963, at which time he became totally and permanently disabled because of cystic lung disease in the left lung and compensatory emphysema in the right lung. Appellee underwent chest surgery performed by Dr. Reiser in Joliet, Illinois in November 1963, and has been disabled since that date.

Claim was made under the policy and was denied by the appellant who contended that the condition causing the disability pre-existed appellee's application for the insurance; that appellee had knowledge of the condition and intentionally withheld the information from appellant and intentionally and fraudulently misrepresented his physical condition in his application for insurance with the fraudulent intent to deceive the appellant.

This was denied by appellee who filed suit. At the conclusion of the trial, judgment was entered for appellee for $2,819.00 accrued benefits under the policy, for attorney's fees in the amount of $940.00 and penalty in the amount of $338.40 and for costs.

At the trial of this case the appellee, as well as his wife, testified that the agent for the appellant insurance company came to their home soliciting insurance business and that the agent read the questions from the application form and then filled in the answers. Both the appellee and his wife testified that to the best of their knowledge the answer to question No. 8 was true, and that in answer to question No. 9 on the application form, appellee advised the agent that he had been hospitalized for a short period of time in Joliet, Illinois where he

was under the care of Dr. Blondis who told him he had Asian flu. Both the appellee and his wife testified that the agent remarked that this short period of hospitalization for Asian flu was of small significance and that the agent wrote "no" as an answer to question No. 9. The agent testified that he wrote the answers correctly as given to him by the appellee.

The appellee, as well as his wife, testified that to the best of their knowledge appellee was in good health and free from physical impairment or deformity at the time the application was made. Appellee introduced his income tax statements in support of his and his wife's testimony that he was regularly employed as a carpenter and that his income was rather constant and indicative of full time employment for 1960, 1961, 1962 and 1963.

Appellee denied any knowledge of lung disease prior to the operation, and denied that Dr. Blondis or any other doctor ever told him he had lung disease. He denied that Dr. Blondis told him anything other than he had Asian flu when he was hospitalized for two or three days in 1960.

Dr. Hickey of Morrilton testified that he treated appellee for fracture of the femur and had also rendered "follow up" treatment following the chest surgery. Dr. Hickey testified that in his opinion appellee's thoracic condition developed over a period of five to fifteen years, but that it was possible that appellee could have been able to perform his normal duties; that many people with such disease work right along with it.

Dr. Blondis testified by deposition that he had treated appellee in the hospital about February 1960; that he diagnosed appellee's condition as fibrocystic disease of the left lung, extensive with recurrent bronchitis and that he advised appellee of the condition. Dr. Blondis testified that he obtained a history from appellee of an automobile injury and hospitalization in the Army-

Navy Hospital in Hot Springs for injury to the right chest, and that at that time appellee was advised that he had cystic disease of the left lung; that he also obtained a history of a crushing injury to the left chest in a truck accident during World War II following which appellee was hospitalized in a government hospital in Memphis, Tennessee. Dr. Blondis testified that he relied on his own records and on hospital records for this information, but admits that some of his records were misplaced when he moved his office.

Appellee admitted he was injured in an automobile accident while in a C.C.C. Camp near Hot Springs in 1938, and that he was hospitalized in the Army-Navy Hospital in Hot Springs for that injury, but denies being told that he had cystic disease of the lung. He denied being in World War II and denied having ever suffered an injury to the left side of his chest. He denied having ever been a patient in any hospital in Memphis, Tennessee.

Both Dr. Blondis and Dr. Hickey were of the opinion that the fibrotic condition of Appellee's left lung was probably congenital in origin and Dr. Hickey testified that it was entirely possible that a person could have such condition and not know it until it became disabling.

Appellant alleged fraud in this case. It alleged that appellee knowingly gave untrue answers to questions in his application for insurance and that he did so intentionally and with purpose and intent to deceive the appellant and fraudulently procure the issuance of the insurance policy. This case was submitted to the trial court on conflicting testimony and in a situation that placed the burden of proof on the appellant.

In the case of *Aetna Life Insurance Company* v. *Mahaffy*, 215 Ark. 892, 224 S. W. 2d 21 (1949) the insured had applied and received some eight insurance policies totaling $20,000.00. The policies were life policies and waived premiums in the event of total disability be-

fore age sixty. Mahaffy made claim for the waiver of premiums under the total disability clause, alleging total disability because of blindness which constituted disability under the provisions of the policy. The insurance company disallowed the claim on the ground that Mahaffy had concealed his approaching blindness, and the company sought cancellation of the contestable portions of the policy.

Mahaffy applied for the policy in March 1942. He had started wearing glasses prior to March 1942. He had visited an eye specialist to see about new glasses and the diagnosis revealed a blinding disease but he was not told of the diagnosis.

The application form contained a question as to whether or not the applicant had any impairment of eye sight, to which Mahaffy answered "No."

In sustaining the trial court's decision in favor of Mahaffy, this court quoted with approval from the cases in *Harper* v. *Bankers Reserve Life Co.,* 185 Ark. 1082, 51 S. W. 2d 526, and *Old Colony Life Insurance Company* v. *Julian,* 175 Ark. 359, 299 S. W. 366, as follows:

"If the applicant states what he honestly believes to be true regarding his physical condition, the fact that it turns out not to be true does not avoid the policy, as it is a representation merely. Of course, if his statements are false and known to him to be false, and are made fraudulently, they have the same effect as warranties.

"The burden is on (the insurer) to establish the fraud by proving affirmatively the falsity, materiality and bad faith in the representations made by the insured in the application regarding his health."

In the case of *Old American Life Insurance Company* v. *McKenzie,* 240 Ark. 984, 403 S. W. 2d 94 (1966), the appellee was issued an insurance policy on his appli-

cation solicited by the sales manager for the appellant insurance company. The application stated that the appellee had no physical defects at that time, but further medical history on the application form revealed a disc operation in 1962. The appellee received injuries in an automobile accident and brought suit to recover medical expenses under the policy.

The company alleged a willful, fraudulent, and material misrepresentation in the application as a defense. This defense was based on the fact that between 1962 and the date of the policy, appellee had had two subsequent operations on his back. Appellee had maximum recovery from both operations prior to the purchase of the insurance policy, and in sustaining a judgment for appellee, this court quoting from 1 Appleman, Insurance Law & Practice, § 220 (1965), said:

> ". . . 'an insurer cannot complacently rely upon statements made by the insured where the type of information is of a character suggesting a cautionary investigation as to the accuracy of the statements given. And where the insured discloses that he has undergone an operation and furnished the company with the name of the attending physician, it has ample information from which to investigate further, and cannot complain that the insured failed to relate an illness ensuing upon such operation.'"

In the case of *Southern National Insurance Company* v. *Heggie,* 206 Ark. 196, 174 S. W. 2d 931 (1943), the appellant insurance company denied liability on a life insurance policy, contending that the insured had misrepresented her physical condition by stating she was in good health when she was not. The application was taken by a soliciting agent for appellant who filled out the application form, and there was a conflict in the testimony as to whether he was told by the insured that she had previously had tuberculosis.

In affirming a decision of the trial court in favor

of the validity of the policy, this court said:

"It has been frequently held by this court that, where an applicant for insurance makes to the agent of the insurer a full disclosure of the facts inquired about in the application, but the agent fails to write down the answers of the applicant correctly, and the applicant is permitted by the agent to sign the application without reading it or hearing it read, the knowledge of the agent as to the physical condition of applicant is imputed to the company and, if a policy is issued on such an application, the company is estopped in an action on said policy to set up the falsity of the answers in the application.

"The rule is thus stated in the case of *Union Life Insurance Company* v. *Johnson,* 199 Ark. 241, 133 S. W. 2d 841 (headnote 2): 'Where the facts have been truthfully stated to the soliciting agent, but, by fraud, negligence or mistake, are misstated in the application, the company cannot set up the misstatements in avoidance of its liability, if the agent was acting within his real or apparent authority and there is no fraud or collusion upon the part of the assured.' "

The cases are numerous and varied on the points here involved, and the decision in each case is of necessity based on the facts peculiar to the particular case.

In the case before us there was a direct conflict in the testimony of the appellee and his wife on the one hand, and that of the soliciting agent on the other. Much of the pertinent testimony of Dr. Blondis was based on history which appellee denied giving and the records from the Army-Navy Hospital in Hot Springs and from the government hospital in Memphis, where appellee denies he was ever a patient, were not offered in evidence. There is no question that appellee was able to work, and did work, for at least one year before, and two years following, his application.

The trial court was sitting as a jury in this case and weighed the evidence in favor of appellee. We are of the opinion that there was substantial evidence to support the findings of the trial court, and that the decision of the trial court should be affirmed.

Affirmed.