■ ANTON CURANOVIC, Appellant, v NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY et al., Respondents. [762 NYS2d 148] —Kane, J. Appeal from an order of the Supreme Court (Rumsey, J.), entered July 1, 2002 in Broome County, which granted defendants' motions for summary judgment dismissing the complaint.

In November 1997, plaintiff sustained a fire at his house, which had been uninsured for several months. A code enforcement officer determined that certain structural and electrical repairs needed to be completed and inspected before the house could be occupied. Plaintiff completed the electrical repairs and, on December 17, 1997, an inspector authorized reoccupancy of the premises. Prior to and after this fire, plaintiff had been staying with his sons at a home deeded to plaintiff as custodian for his minor son. In December 1997, plaintiff and one of his sons went to the offices of defendant Partners Insurance Agency to obtain homeowner's insurance. Partners' insurance agent, Mary Oliver, asked plaintiff questions and typed the answers on an application for insurance with defendant New York Central Mutual Fire Insurance Company. Plaintiff can neither read nor write English, but did not inform Oliver of this. Oliver handed plaintiff the completed application, asked him to read and sign it if no corrections were necessary, then plaintiff signed it. An insurance binder was issued. Shortly after leaving the office, plaintiff's son told plaintiff that there were some inaccurate answers on the application. One was the negative answer to the question, "[A]ny losses, whether or not paid by insurance, during the last 3 years, at this or any other location?" Oliver later admitted that when she read this question, she merely asked whether there were any losses in the prior three years. Many other misstatements by plaintiff were also alleged. Plaintiff never spoke to Oliver again and these misstatements were never corrected.

On January 18, 1998, plaintiff's house and its contents were totally destroyed by a fire. New York Central denied plaintiff's claim on the bases that it was arson and there were material misrepresentations on plaintiff's policy application. Plaintiff commenced this action against New York Central for breach of contract and against Partners for negligent misrepresentation. Both defendants moved for summary judgment dismissing the complaint. Plaintiff appeals from Supreme Court's order granting both motions.

Plaintiff first argues that New York Central was required to show that any misrepresentation was intentional and material in order to void the policy. An insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement to making the contract and the misrepresentation was material (*see* Insurance Law § 3105 [a], [b]). "Rescission is available even if the material misrepresentation was innocently or unintentionally made" (*Nationwide Mut. Fire Ins. Co. v Pascarella*, 993 F Supp 134, 136 [1998] [citation omitted]; *see Hol-*

*loway v Sacks & Sacks*, 275 AD2d 625 [2000], *lv denied* 95 NY2d 770 [2000]; *Meagher v Executive Life Ins. Co. of N.Y.*, 200 AD2d 720, 720 [1994]; *Tennenbaum v Insurance Corp. of Ireland*, 179 AD2d 589, 592 [1992]; *see also Mutual Benefit Life Ins. Co. v JMR Elecs.*, 848 F2d 30, 32 [1988]). Despite plaintiff's claims that the misrepresentations were innocent, he signed the application indicating that all information was correct. The signer of a contract is conclusively bound by it regardless of whether he or she actually read it (*see Maines Paper & Food Serv. v Adel*, 256 AD2d 760, 761 [1998]). The inability to understand the English language is insufficient to avoid this general rule (*see id.* at 761). Here, although portions of the application were read to plaintiff by Oliver, he made no effort to have someone else read or explain the entire document to him. "An insured cannot remain silent while cognizant that his insurance application contains misleading or incorrect information" (*North Atl. Life Ins. Co. of Am. v Katz*, 163 AD2d 283, 284 [1990] [citations omitted]), but "ha[s] a duty to review the entire application and to correct any incorrect or incomplete answers" (*id.* at 285). Whether or not plaintiff intended to provide inaccurate statements or misrepresentations at the time he filled out the application is irrelevant, as he was bound by those answers and swore to their accuracy by signing the application although he knew he could not read it, yet did not ask Oliver or his son to read the completed application to him. Additionally, when he discovered inaccuracies shortly after leaving Partners' office, he failed to comply with his duty to correct that information (*compare Holloway v Sacks & Sacks, supra* at 626).

While it is clear that plaintiff's application contained misrepresentations, as found by Supreme Court, those misrepresentations must be proven material before New York Central can avoid payment under the contract. Materiality is generally a question of fact (*see Carpinone v Mutual of Omaha Ins. Co.*, 265 AD2d 752, 754 [1999]). To establish materiality of misrepresentations as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins or rules pertaining to similar risks, to establish that it would not have issued the same policy if the correct information had been disclosed in the application (*see id.* at 754; *see also* Insurance Law § 3105 [c]; *Iacovangelo v Allstate Life Ins. Co. of N.Y.*, 300 AD2d 1132, 1133 [2002]). Conclusory statements by insurance company employees, unsupported by documentary evidence, are insufficient to establish materiality as a matter of law (*see Carpinone v Mutual of Omaha Ins. Co., supra* at 755; *but cf. North Atl. Life Ins. Co. of Am. v Katz, supra* at 285).

Here, New York Central has no written underwriting policies on the topic of plaintiff's misrepresentations and the conclusory affidavits by its employees are insufficient. The affidavit of the independent insurance broker is likewise deficient since it, like the affidavits of the employees and the testimony of Oliver, neither identifies a written underwriting policy nor does it identify any specific applicants with similar histories that were denied coverage (*see Iacovangelo v Allstate Life Ins. Co. of N.Y., supra* at 1133; *Church of Transfiguration v New Hampshire Ins. Co.*, 207 AD2d 1039, 1039 [1994], *lv denied* 1994 WL 712777 [4th Dept. 1994]; *Alaz Sportswear v Public Serv. Mut. Ins. Co.*, 195 AD2d 357, 358 [1993]). Thus, there is a question of fact regarding the materiality of the misrepresentations here which requires denial of the insurer's motion for summary judgment.

Plaintiff further contends that Partners is liable for negligent misrepresentation because a special relationship existed. Insurance agents generally are not liable for anything more than obtaining the requested coverage, unless there is a special relationship with the insurance customer justifying reliance on the agent's speech (*see Murphy v Kuhn*, 90 NY2d 266, 270 [1997]; *Catalanotto v Commercial Mut. Ins. Co.*, 285 AD2d 788, 790 [2001], *lv denied* 97 NY2d 604 [2001]). New York courts disfavor finding such a relationship, but can recognize an additional duty in exceptional situations, for example where the agent receives compensation for consultation beyond the premium payments, the insured relies on expertise of the agent regarding a raised question of coverage, or there is an extended course of dealing sufficient to put objectively reasonable agents on notice that their advice was being specially relied upon (*see Murphy v Kuhn, supra* at 272). Plaintiff's only encounter with Oliver was the single appointment to obtain the subject policy; he made no payments beyond the premium and he never informed her that he could not read English even when she asked him to read over the application, so this was akin to a normal insurance agent/customer relationship. Plaintiff is bound by the application after signing it and his duty to correct inaccuracies once discovered applies to Partners as well as New York Central.

Plaintiff also contends that there are questions of fact regarding his attempts to notify Oliver of the misstatements on his application and correct them. Plaintiff's deposition testimony indicated that he believed he and his son called Partners several times but Oliver was never available, that they left messages for Oliver and told the receptionist there were mistakes

on the application, and they informed the receptionist of inaccuracies when plaintiff dropped off another document at Partners' office. His son, however, testified at his deposition that he never spoke to or called anyone at Partners after the application appointment, and he was not present when plaintiff later went to Partners' office. Additionally, Partners' records contain no mention of any contact by or on behalf of plaintiff regarding any inaccuracies. Although credibility questions are generally reserved for the jury, in certain circumstances credibility may be properly determined as a matter of law (*see Bushman v Di Carlo*, 268 AD2d 920, 922 [2000], *lv denied* 94 NY2d 764 [2000]; *Home Mut. Ins. Co. v Lapi*, 192 AD2d 927, 929 [1993]; *Rickert v Travelers Ins. Co.*, 159 AD2d 758, 759 [1990], *lv denied* 76 NY2d 701 [1990]). Supreme Court properly determined that plaintiff's statements were self-serving and incredible on these points, permitting summary judgment in favor of Partners.

Spain, J.P., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant New York Central Mutual Fire Insurance Company's motion for summary judgment; said motion denied; and, as so modified, affirmed.