Lamar NEILL and Rose Neill *v.*
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

03-214                                    139 S.W.3d 484

Supreme Court of Arkansas
Opinion delivered December 18, 2003

[Petition for rehearing denied January 29, 2004.*]

---

* BROWN, J., would grant rehearing.

*Gibson Law Office*, by: *C.S. "Chuck" Gibson*, for appellants.

*Harrison, Watts, Donovan & Tilley, P.A.*, by: *Jim Tilley* and *Michael McLarty*, for appellee.

Jim Hannah, Justice. Lamar Neill appeals a summary judgment entered in favor of Nationwide Mutual Fire Insurance Company finding a policy was void *ab initio* because the insurance application signed by Neill and prepared by an agent of Nationwide indicated Neill had no prior history of fire losses when he did. Neill asserts that the trial court erred in granting summary judgment because genuine issues of material fact remain regarding whether Neill or Nationwide is responsible for the mistakes about prior fire

history on the application. Nationwide argues that Neill is bound by the application because he signed it certifying that the facts stated in the application were true. We hold that where an insured signs an application which was prepared by an insurance company's agent, and a conflict in the evidence arises as to whether an error on an insurance application was caused by the fraud, negligence or mistake of the agent, a question of material fact is presented which precludes entry of summary judgment.

This court has jurisdiction pursuant to Ark. Sup. Ct. R. 2-4(c)(ii)(iii)(2003).

*Facts*

On November 18, 1993, Neill applied for homeowners insurance with Nationwide. As a part of the application process, Nationwide's agent verbally asked Neill a series of questions and entered responses on a computer. The agent then printed the application and handed it to Neill. Neill signed the application. It is undisputed that Neill did not read the application before signing it. Printed on the application under the heading, "PAST LOSSES," is the word "NONE."

This loss report on the application was false. Neill had suffered three previous fire losses. On April 16, 1997, the Neill mobile home was damaged by fire. After the fire, Nationwide's adjustors asked Neill if he had suffered prior fire losses. He stated that he had. Nationwide then obtained an examination under oath of Neill and determined that Neill had suffered three prior losses by fire. After the examination under oath and completion of its investigation, Nationwide issued a written denial of coverage to Neill, alleging that the policy was void *ab initio* as a consequence of Neill's misrepresentation on the insurance application regarding prior fire losses.

Nationwide filed a Complaint for Declaratory Judgment and Damages asserting that the policy was void based on a material misrepresentation on the application for insurance regarding prior losses. Neill and his wife responded with a counterclaim for damages sustained in the fire, which was later amended to include causes of action for breach of contract and bad faith. Nationwide moved for summary judgment alleging that the policy was void *ab initio* because of misrepresentation in the application, and alleged further that had Nationwide known of the prior losses, the policy would not have been issued. Although Neill's position in this case

was that any error in the application was Nationwide's fault because he was never asked about losses in the application process, Nationwide did not address that issue in its motion for summary judgment. Instead, Nationwide presented the trial court with the single issue of whether by signing the application that lacked information on prior losses Neill was bound by its contents. The trial court agreed with Nationwide and granted the motion for summary judgment finding that the three prior fire losses were material and entitled Nationwide to void the policy. Neill appealed the trial court's decision to the court of appeals which reversed and remanded the case. *See Neill v. Nationwide Mut. Fire Ins. Co.*, 81 Ark. App. 67, 98 S.W.3d 448 (2003). Nationwide filed a Petition for Review in this court which was granted.

### *Standard of Review*

When we grant a petition for review, we consider the matter as if the appeal had been originally filed in this court. *BPS, Inc. v. Parker*, 345 Ark. 381, 47 S.W.3d 858 (2001). A trial court may grant summary judgment only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Craighead Elec. Coop. Corp. v. Craighead County*, 352 Ark. 76, 98 S.W.3d 520 (2003); *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002). Once the moving party has established a *prima facie* case showing entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Craighead Elec., supra; Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998).

### *Fraud or Misrepresentation on the Application*

There is no dispute that the application failed to list three prior fire losses suffered by Neill. The question presented is whether the act of signing the application binds Neill to its contents. Nationwide asserts that "[i]f anyone has a duty to assure that the responses in the application were true, it is an applicant, such as Appellant, not Nationwide." It is, however, undisputed

that Nationwide's agent generated the application and put Neill's responses to the questions on the application. It is also undisputed that Neill did not read the application before signing it.

We begin our analysis by stating the basic principle that an insurance company may retroactively rescind a policy because of fraud or misrepresentation of the insured. *Ferrell v. Columbia Mut. Cas. Ins. Co.*, 306 Ark. 533, 816 S.W.2d 593 (1991); *Old Colony Life Ins. Co. v. Fetzer*, 176 Ark. 361, 3 S.W.2d 46 (1928). In the case before us, Nationwide asserts Neill made misrepresentations on the application when he signed the application that failed to list prior losses suffered by Neill. Nationwide stated in its response to interrogatories that it was Nationwide's position that its agent "inquired of Lamar Neill on November 18, 1993, whether he had any prior losses, and that Mr. Neill's answer was, 'No.' " However, in its motion for summary judgment, Nationwide did not argue about whether the question was asked, but instead argued that since Neill signed the application, he is bound by its false contents. In his response to the motion for summary judgment, Neill argued that the question about losses had not been asked. As evidence in opposition to the motion for summary judgment, Neill offered a portion of his examination under oath taken by Nationwide after the fire where Nationwide asks Neill if the agent asked the question about prior losses in the application process and Neill responded that the question was not asked.

Neill signed the false application. The general rule is that a if a person signs a document, he or she is bound under the law to know the contents of the document. *Banks v. Evans*, 347 Ark. 383, 64 S.W.3d 746 (2002); *Carmichael v. Nationwide Life Ins. Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991). Further, one who signs a contract, after an opportunity to examine it, cannot be heard to say that he or she did not know what it contained. *Dodson v. Abercrombie*, 212 Ark. 918, 208 S.W.2d 433 (1948); *Pittsburgh Steel Co. v. Wood*, 109 Ark. 537, 160 S.W. 519 (1913); *Mitchell Mfg. Co. v. Kempner*, 84 Ark. 349, 105 S.W. 880 (1907).

That is the general rule, however; as found in *Dodson, supra*, there is an exception to the general rule where a signature is procured by fraudulent misrepresentations of what a document contains. *See also Massachusetts Life Ins. Co. v. Brun*, 187 Ark. 790, 62 S.W.2d 961 (1933). In *Belew v. Griffis*, 249 Ark. 589, 460 S.W.2d 80 (1970), we characterized this exception as follows:

Although a person is ordinarily bound to know the contents of a contract which he signs, we have often recognized an exception to the principle when fraud or inequitable conduct is charged.

*Belew*, 249 Ark. at 591. In *Clark v. Trammell*, 208 Ark. 450, 186 S.W.2d 668 (1945), we similarly stated:

If there were no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction, the party who knows, or had an opportunity to know, the contents of an agreement or other instrument, cannot defeat its performance, or obtain its cancellation or reformation, because he mistook the legal meaning and effect of the whole, or of any of its provisions.

*Clark*, 208 Ark. at 452. The exception with respect to contract law generally may therefore be summarized as one is bound by a document signed where there was an opportunity to examine it, unless there was undue influence, misrepresentation, violation of confidence, fraud, concealment or other inequitable conduct involved in procuring the signature.

█ This exception in the context of insurance contracts is broader than in general contract law. This is because there is a "judicial recognition that most insurance contracts rather than being the result of anything resembling equal bargaining between the parties are truly adhesion contracts in which many insureds face two options: (1) accept the standard insurance policy offered by the insurer, or (2) go without insurance." 2 Lee R. Russ, *Couch on Insurance* § 22.11 (3d ed. 1997). An insured has no voice in the preparation of insurance forms. *Old Equity Life Ins. Co. v. Crumby*, 241 Ark. 982, 411 S.W.2d 292 (1967). So it is with the application in this case that was drafted by Nationwide and filled out by its agent.

█ In light of the ascendant position occupied by the insurance company, this court has declared that an insurer will not be allowed to use misstatements in the application to avoid liability where the misstatements are the result of fraud, negligence, or mistake by the insurer's agent. *Interstate Fire Ins. Co. v. Ingram*, 256 Ark. 986, 511 S.W.2d 471 (1974); *Continental Cas. Co. v. Campbell*, 242 Ark. 654, 414 S.W.2d 872 (1967); *Aetna Life Ins. Co. v. Routon*, 207 Ark. 132, 179 S.W.2d 862 (1944); *Southern National Ins. C. v.*

*Heggie,* 206 Ark. 196, 174 S.W.2d 931 (1943), *quoting Union Life Ins. Co. v. Johnson,* 199 Ark. 241, 133 S.W.2d 841 (1939); *see also Burnett v. Philadelphia Life Ins. Co.,* 81 Ark. App. 300, 101 S.W.3d 843 (2003); *Farm Bureau Ins. Co. v. Foote,* 341 Ark. 105, 14 S.W.3d 512 (2000); *General Agents Ins. Co. v. St. Paul Ins. Co.,* 22 Ark. App. 46, 732 S.W.2d 868 (1987); *Time Ins. Co. v. Graves,* 21 Ark. App. 273, 734 S.W.2d 213 (1987); *Gilcreast v. Providential Life Ins. Co.,* 14 Ark. App. 11, 683 S.W.2d 942 (1985); *American Nat'l Ins. Co. v. Hale,* 172 Ark 958, 291 S.W. 82 (1927). We note that *Carmichael, supra,* involved the omission of diabetes on an insurance application for life insurance. In that case, the insured was dead. The only evidence of what occurred in the interview when the application was filled out was provided by the agent. Because the agent testified that the question about health conditions was asked and answered negatively by the insured, there was no question of fact. Summary judgment was granted to Nationwide in *Carmichael* because Nationwide had presented a *prima facie* case by the affidavit of the agent stating he had asked Carmichael each question on the application and had recorded Carmichael's responses. The appellee in *Carmichael* did not meet proof with proof, but rather submitted an affidavit asserting that Carmichael would not have misrepresented his condition. In *Carmichael,* we held that only two people knew what went on in the application interview, and one, the Nationwide agent, had stated facts in an affidavit that Carmichael could not refute because he was dead. Therefore, we affirmed the summary judgment and stated:

> It is well established in Arkansas that one is bound under the law to know of the contents of a paper signed by him and he cannot excuse himself by saying he did not know what it contained. *Pittsburg Steel Co. v. Wood,* 109 Ark. 537, 160 S.W. 519 (1913). Thus, the fact that the decedent signed the application certifying the information contained in it was correct to the best of his knowledge is at least probative evidence of his misrepresentation.

*Carmichael,* 305 Ark. at 552. In *Carmichael* there was evidence probative of misrepresentation, and in response only an assertion by Carmichael's wife that he would not misrepresent his medical condition. Thus, *Carmichael* is inapplicable in this case where Neill asserts he was not asked the question and Nationwide asserts that he was.

Because there is a dispute about what happened between Neill and Nationwide in the application interview, there is a genuine issue of material fact that precludes summary judgment. If the agent misstated Neill's response, or if the agent failed to ask all the questions, the conduct of the agent is imputed to the insurer, and the insurer is estopped from setting up the false answers in the application to avoid the policy. *Campbell, supra; Heggie, supra.* The trial court erred because there is a question of fact regarding why the application contains a misstatement; and therefore, this case must be reversed and remanded.

ARNOLD, C.J., BROWN and THORNTON, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. It is a sad commentary when an applicant's signature on an insurance application becomes meaningless as well as the applicant's declaration that the facts in his application are true. Yet, the majority concludes today that an applicant for insurance who signs an application that says he has had no losses in the past is not bound by his signature. This is so, according to the majority, even though the applicant signs under a statement: "I hereby declare that the facts stated in the above application are true." The effect of today's decision is that any applicant for insurance can now renege on any statement in his or her application by simply saying: "I was never asked that question" or "I did not read the application." All an insured has to do is make either of those declarations, and the matter will automatically be sent to trial.

The majority fails to cite to the blackletter principles espoused by other jurisdictions. One such principle is that it is the duty of every person to read what he or she signs. *See Foster v. Auto-Owners Ins. Co.*, 703 N.E.2d 657 (Ind. 1998). Another is that when an applicant signs an insurance application, that person is responsible for the information contained in it. *See id.* The signer of an insurance application is conclusively bound by it regardless of whether he or she actually reads it. *See Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 762 N.Y.S.2d 148 (2003). An insured has a duty to review the entire application and to correct inaccurate or incomplete answers. *See id.*

Contrary to the majority, I do not view *Interstate Fire Ins. Co. of Chattanooga, Tenn. v. Ingram*, 256 Ark. 986, 511 S.W.2d 471 (1974), or *Southern Nat'l Ins. Co. v. Heggie*, 206 Ark. 196, 174 S.W.2d 931 (1943), as controlling this case. Both cases involved

issues of fraud, negligence, or mistake where an insurance agent incorrectly wrote down the wrong answer given by the insured. That is what created an issue of fact. Here, there was no disputed issue of fact. Neither Neill nor Nationwide averred that Neill was *asked* about prior losses. But even if the insured was not asked specifically about prior fire losses, his application showed the answer "none" under the question relating to prior losses. Neill declared that this fact was true by signing his name under a declaration of truthfulness, and it was not. I conclude that Neill had a duty to read the application and is bound by what he signed, which is precisely what we held in *Carmichael v. Nationwide Life Ins. Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991).

The facts in *Carmichael* are analogous to the facts before us. There, the insured's beneficiary appealed from a grant of summary judgment in favor of the insurance company. Following the insured's death, the insurer completed a routine investigation to determine whether the decedent's answers on his application for life insurance were true. During the investigation, the insurer discovered that the insured had previously been diagnosed with diabetes prior to applying for life insurance. However, on the insured's application, the box responding to the question of whether he had in fact been previously treated for diabetes was marked "no." The insurance company then refused to pay the benefits under the policy to the insured's beneficiary.

The beneficiary filed suit against the insurance company, and the company moved for summary judgment, which was granted. On appeal, the beneficiary asserted, as here, that the agent either failed to obtain the decedent's response to each question on the application or failed to accurately record the answers given. The insurance company responded and urged that the decedent insured made misrepresentations which were material to its acceptance of risk under the policy. In addition, the company claimed that by signing the declaration at the bottom of the application for insurance, the decedent certified that the information contained therein was correct to the best of his knowledge. We agreed with the insurance company and said:

> It is well established in Arkansas that one is bound under the law to know of the contents of a paper signed by him and he cannot excuse himself by saying he did not know what it contained. *Pittsburg Steel Co. v. Wood*, 109 Ark. 537, 160 S.W. 519 (1913). *Thus, the*

*fact that the decedent signed the application certifying the information contained in it was correct to the best of his knowledge is at least probative evidence of his misrepresentation.*

305 Ark. at 552, 810 S.W.2d at 41 (emphasis added). We then held that the court did not err in granting the insurance company summary judgment because the beneficiary had not met proof with proof and created an issue of material fact.

Similarly, in the case before us there is no disputed issue of fact. Stated differently, there is no issue about whether the Nationwide agent wrote down incorrect answers or whether he specifically asked about prior losses. The question squarely before us is whether an insurance applicant is bound by what he signs. The majority says he is not. In doing so, the majority has apparently overruled the *Carmichael* case.

Neill had had three prior fire losses, and his application was blatantly false. Regardless of that fact, Nationwide is now required, under the majority's reasoning, to take the matter to trial, though there is no disputed issue of material fact. The far better course, in my judgment, is to bind a person by what he or she signs. The impact of this decision on commerce in general is marked and will, no doubt, cast doubt on multiple representations made in connection with multiple endeavors.

I respectfully dissent.

ARNOLD, C.J., and THORNTON, JJ., join in this dissent.