Elizabeth Dianne FRANCIS *v.*
PROTECTIVE LIFE INSURANCE COMPANY
and Chrysler Financial Corporation

CA 06-241                                  249 S.W.3d 828

Court of Appeals of Arkansas
Opinion delivered February 14, 2007

*Sam Sexton III*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *John K. Baker* and *P. Benjamin Cox*, for appellee Protective Life Insurance Company.

*Watts, Donovan & Tilley, P.A.*, by: *Richard N. Watts, Debbie S. Denton*, and *Staci Dumas Carson*, for appellee Chrysler Financial Corporation.

JOHN B. ROBBINS, Judge. Appellant Elizabeth Francis brings this appeal challenging the Johnson County Circuit Court's

grant of appellee Chrysler Financial Corporation's motion to dismiss, the grant of summary judgment in favor of Chrysler on its counter-claim, and the grant of summary judgment in favor of appellee Protective Life Insurance Co. (PLI). Francis asserts that the trial court erred in granting summary judgment to both Chrysler and PLI. We reverse and remand.

On April 14, 2002, Francis and her husband, Terrill Keith Francis, purchased a new vehicle from Breeden Dodge in Fort Smith. As part of the transaction, the Francises entered into a retail installment contract that was assigned to Chrysler. They also applied for a credit life insurance policy on Mr. Francis's life from PLI. The application contained the following language: "I am not insurable for *any* coverage if I now have, or during the past 2 years have been seen, diagnosed or treated (including medications) for: (a) A condition, disease or disorder of the . . . lung(s) . . . ." (Emphasis in original.) Immediately above the signature block, the following language appears in bold type: "I have read and under-stand this Application and represent that I am insurable for the coverage as requested in the Schedule . . . ." Mr. Francis's signature is affixed in the signature block. It is undisputed that Mr. Francis suffered from chronic obstructive pulmonary disease (COPD) and had been treated for that disease within two years of making the application. It is also undisputed that Mr. Francis required the use of oxygen and medication for his condition.

Mr. Francis died on January 6, 2003. The cause of death was listed as a probable stroke, with COPD listed as an underlying cause. A claim was submitted to PLI for the proceeds of the policy. PLI denied coverage by letter dated April 4, 2003, stating that Mr. Francis was ineligible for coverage because of his COPD and that the policy should not have been issued. PLI refunded the entire premium for the policy.

On June 6, 2003, Elizabeth Francis filed suit against PLI and Chrysler, alleging that her husband was eligible to apply for life insurance, that the application was ambiguous as to the require-ments for eligibility, and that her husband's health condition was known to the employees of Breeden Dodge who took the appli-cation and were acting as agents for PLI. The complaint alleged that the Breeden Dodge employees were negligent and that their conduct could be asserted against Chrysler. Francis sought dam-ages against PLI in an amount sufficient to pay the remaining balance owed on the vehicle, together with the twelve-percent

statutory penalty. In the alternative, the complaint sought a declaratory judgment against Chrysler that no further debt was owed on the vehicle.

Chrysler filed an answer in which it denied the material allegations of the complaint and asserted that, if Terrill Francis misrepresented material facts in the application, no funds were due to Elizabeth Francis. It also filed a motion to dismiss, asserting that the complaint failed to state facts upon which relief could be granted. The motion also asserted that the Breeden Dodge employees were not acting as Chrysler agents when selling the policy at issue and that the knowledge of the Breeden Dodge employees was not imputed to Chrysler. Later, Chrysler filed a separate counterclaim alleging that Francis breached the retail installment contract by failing to make payments on the vehicle. The counterclaim sought an order requiring Francis to make the payments into the court's registry or to allow Chrysler to take possession of the vehicle.

Francis responded to both the motion to dismiss and the counterclaim by asserting that Chrysler was subject to any defenses that she could have asserted against Breeden Dodge. She also asserted that Breeden Dodge employees were negligent and made misrepresentations when they told Francis and her husband that he was eligible for insurance coverage.

PLI filed an answer denying the material allegations of the complaint and a counterclaim seeking rescission of the policy. The counterclaim sought rescission based on misrepresentations by Terrill Francis. Francis responded to the counterclaim by alleging that the facts were known by and imputed to PLI.

On March 2, 2005, PLI filed a motion for summary judgment on its counterclaim for rescission, asserting that Mr. Francis misrepresented his health condition in the application; that the misrepresentation was material; and that, without the misrepresentation, the policy would not have been issued. Francis responded to the motion by asserting that the application form was ambiguous; that the employees of Breeden Dodge, acting as PLI's agents when they assisted in completing the application, were aware of Mr. Francis's medical condition; and that such knowledge was imputed to PLI. The response also asserted that the Breeden Dodge employees made material misrepresentations when they advised the Francises that "[PLI will] cover you" and that PLI was thereby estopped to deny coverage. In her affidavit, Francis stated

that, while the paperwork for the transaction was being completed, Mr. Francis used oxygen in the presence of the Breeden Dodge employees; and that these employees were informed that Mr. Francis would need a lift for his wheelchair in the van and space for his oxygen bottles because he was a disabled veteran. She also said that, if credit life insurance were not available through Breeden Dodge, she and her husband would have made arrangements to purchase coverage elsewhere.

On April 6, 2005, the trial court granted Chrysler's motion to dismiss without explanation. On June 1, 2005, the trial court entered an order granting PLI's motion for summary judgment.

On September 27, 2005, Chrysler moved for summary judgment on its counterclaim. It asserted that, after the trial court dismissed Francis's complaint and granted PLI's motion for summary judgment, Francis was without a valid defense to the counterclaim. Chrysler also attached Francis's answers to request for admissions wherein Francis admitted that no payments had been made since May 2003. Francis responded by asserting that she had a defense to the collection action in that the misrepresentations made by the Breeden Dodge employees could be asserted to Chrysler, as the holder of the retail installment contract. She also incorporated and attached the affidavit previously filed in opposition to PLI's motion.

The trial court granted Chrysler's motion for summary judgment by order filed on November 1, 2005. An amended and substituted order dated November 2, 2005, clarifying that the grant of summary judgment was on Chrysler's counterclaim was filed by fax on November 3, 2005. A hard copy of this order was never filed of record. A judgment dated November 2, 2005, was also filed by fax on November 3, 2005, awarding Chrysler judgment against Francis in the amount of $22,786.60, together with post-judgment interest of six percent. Again, a hard copy of this judgment was not filed. A second judgment was filed on November 10, 2005. This judgment contained provisions identical to the earlier faxed judgment except that it was dated November 7, 2005, and bore interest of ten percent.

Francis filed a notice of appeal on December 9, 2005. The notice stated that she was appealing from the order in favor of PLI entered on November 10, 2005, together with the order dismissing the complaint as to Chrysler; from the order granting summary judgment to PLI; and from the November 1, 2005, order in favor of PLI.

We first discuss a preliminary matter relating to our jurisdiction. PLI and Chrysler both raise an issue concerning the timeliness of this appeal in their briefs. They argue that the appeal is untimely because the final order and a judgment were filed with the clerk of the trial court by fax on November 3, 2005. Francis filed her notice of appeal on December 9, 2005, more than thirty days from the filing of the faxed order and judgment. We denied a motion to dismiss the appeal on the same grounds in April 2006.[1]

Arkansas Rule of Appellate Procedure – Civil 4(a) provides that a notice of appeal must be filed within thirty days of the entry of the judgment or order from which the appeal is taken. Thus, we must determine when the trial court's order and judgment in the present case were "entered."

Arkansas Rule of Civil Procedure 58 provides, in pertinent part, that "[a] judgment or decree is effective only when so set forth and entered as provided in Administrative Order No. 2." In turn, Administrative Order No. 2, sections (b)(2), (3) provide, in pertinent part:

> (2) The clerk shall denote the date and time that a judgment, decree or order is filed by stamping or otherwise marking it with the date and time and the word "filed." A judgment, decree or order is entered when so stamped or marked by the clerk, irrespective of when it is recorded in the judgment record book.

> (3) If the clerk's office has a facsimile machine, the clerk shall accept facsimile transmission of a judgment, decree or order filed in such manner at the direction of the court. The clerk shall stamp or otherwise mark a facsimile copy as filed on the date and time that it is received on the clerk's facsimile machine during the regular hours of the clerk's office or, if received outside those hours, at the time the office opens on the next business day. *The date stamped on the facsimile copy shall control all appeal-related deadlines pursuant to Rule 4 of the Arkansas Rules of Appellate Procedure-Civil. The original judgment, decree or order shall be substituted for the facsimile copy within fourteen days of transmission.*

(Emphasis added.)

However, here there was no compliance with Administrative Order No. 2 in that the original of the November 3

---

[1] After submission of this case, we attempted to certify the case to the supreme court on this jurisdictional issue. The supreme court declined to accept the certification.

fax-filed judgment was never filed with the trial court as a substitute for the facsimile copy. This results in the only valid order being the November 10 judgment. Francis filed her notice of appeal within thirty days of the entry of that judgment. Therefore, we have jurisdiction to hear this appeal.[2]

On appeal, Francis argues that the trial court erred in granting summary judgment to both Chrysler and PLI. Summary judgment should be granted only when it is clear that there are no genuine issues of material fact, and the party is entitled to judgment as a matter of law. *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On review, we must determine whether there are any genuine issues of material fact. *Id.* In our review, we consider whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* All proof is viewed in the light most favorable to the party resisting the motion, with all doubts and inferences resolved against the moving party. *Smith v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 88 Ark. App. 22, 194 S.W.3d 212 (2004).

In her first point, Francis asserts that the trial court erred in granting summary judgment to PLI. Under this point, she raises three subpoints.

■ She first argues that the PLI policy does not comply with Ark. Code Ann. § 23-80-206(a) (Repl. 2004), which provides in pertinent part:

> (a) In addition to any other requirements of law, no policy forms, except as stated in § 23-80-204, shall be delivered or issued for delivery in this state on or after the dates forms must be approved under this subchapter, unless:

---

[2] We are, of course, cognizant of a Reporter's Note to Administrative Order No. 2 that provides, in pertinent part, that "[t]o ensure the permanency of official court records, the original judgment . . . must be substituted for the facsimile copy within 14 days of transmission, but this step does not have any bearing on the effectiveness of the faxed document or the time for taking an appeal." The reporter's notes may offer some guidance as to the interpretation of this provision but are not precedent for this court. *See Green v. Mills*, 339 Ark. 200, 4 S.W.3d 493 (1999). Furthermore, a literal application of the reporter's note would render nugatory the "shall be substituted" language of the rule.

. . . .

    (2) It is printed, except for specification pages, schedules, and tables, in not less than ten-point type, one-point leaded;

    (3) The style, arrangement, and overall appearance of the policy give no undue prominence to any portion of the text of the policy or to any endorsements or riders[.]

Francis cites us to no cases in which an Arkansas court has declared an insurance policy invalid on the basis of Ark. Code Ann. § 23-80-206(a). Further, Ark. Code Ann. § 23-79-118 provides that "[a]ny insurance policy . . . issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had the policy . . . been in full compliance with this code." This section precludes any relief to Francis based on any noncompliance with the requirements of section 23-80-206.

    Francis also argues as another subpoint that the policy is ambiguous as to the requirements for eligibility. We disagree. One part of the application states:

WARNING — YOU MUST BE ELIGIBLE TO APPLY FOR INSURANCE

    You are not eligible for *any* insurance if you have attained age 66 as of the Effective Date; or if you will have attained age 69 as of the Expiration Date of the insurance.

(Emphasis in original.) Francis argues that this section of the application conflicts with the section, quoted above, providing that an applicant is not insurable for any coverage if he has "been seen, diagnosed or treated (including medication) for: (a) A condition, disease or disorder of the . . . lung(s)[.]"

    We do not believe that there is any conflict between the two sections. The language of an insurance policy is to be construed in its plain, ordinary, and popular sense. *Nichols v. Farmers Ins. Co.*, 83 Ark. App. 324, 128 S.W.3d 1 (2003). The different clauses of an insurance contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible. *Id.*

When read together, the two sections provide that a potential insured must meet the age requirements and not have been treated for any of the conditions listed in the insurability section within two years of the application. This is borne out by the language immediately above the signature block that states in bold type "that I am insurable for the coverage as requested." Therefore, we cannot say that the policy is ambiguous.

In her third subpoint, Francis argues that PLI is estopped to deny coverage. Francis's argument is that the Breeden Dodge employee who completed the paperwork for the automobile purchase and the insurance application made representations to Francis and her husband that, despite Mr. Francis's health conditions, PLI would insure him. In her affidavit, Francis stated that, while they were at Breeden Dodge, Mr. Francis had to return to their vehicle for oxygen and this was known to Breeden's employees; and Breeden's employees were told that Mr. Francis would need a lift for his wheelchair and space for his oxygen bottles. Francis also stated that her husband informed the Breeden Dodge employee completing the paperwork that he was a disabled veteran, that they had credit life on the vehicle they were trading in, and that they wanted the same coverage for the new vehicle. She also averred that the Breeden employee responded that "it's no problem, they'll cover you." Francis also asserted that she and her husband relied on these representations in purchasing the credit life policy.

PLI does not argue that there were no misrepresentations. Instead, PLI argues that the Breeden Dodge employees were soliciting agents for PLI and, as such, their knowledge was not imputed to PLI. *See Dodds v. Hanover Ins. Co.*, 317 Ark. 563, 880 S.W.2d 311 (1994). However, the supreme court did not draw such a distinction when it reversed a summary judgment in favor of an insurance company in *Neill v. Nationwide Mutual Fire Insurance Co.*, 355 Ark. 474, 139 S.W.3d 484 (2003). In *Neill*, the supreme court held that an insurer will not be allowed to use misstatements in the application to avoid liability where the misstatements are the result of fraud, negligence, or mistake by the insurer's agent. There was also no discussion in *Neill* of the distinction between a soliciting agent and a general agent. *See also Cincinnati Life Ins. Co. v. Mickles*, 85 Ark. App. 188, 148 S.W.3d 768 (2004); *Burnett v. Philadelphia Life Ins. Co.*, 81 Ark. App. 300, 101 S.W.3d 843 (2003).

■ We believe that the employee's statement upon which Francis relies as a misrepresentation is ambiguous in that it could be construed as meaning that Mr. Francis's being a disabled veteran, by itself, was not a bar to obtaining coverage. It could also be construed as meaning that, despite his health condition and treatment for COPD, PLI would cover Mr. Francis. Although the facts are undisputed, this ambiguity precludes summary judgment in favor of PLI. *Fields v. Southern Farm Bureau Cas. Ins. Co.*, 350 Ark. 75, 87 S.W.3d 224 (2002). Therefore, we reverse on this point.

■ In her second point, Francis asserts error in the trial court's dismissing her complaint against Chrysler and in granting summary judgment in favor of Chrysler on its counterclaim. Chrysler's counterclaim sought payment under the original retail installment contract. Its motion for summary judgment was predicated upon the trial court's having granted summary judgment to PLI, thereby eliminating any legal defense to payment Francis might have. Because we reverse the grant of summary judgment to PLI, we also reverse the summary judgment in favor of Chrysler.

Reversed and remanded.

HART, GLADWIN, and GRIFFEN, JJ., agree.

PITTMAN, C.J., and BIRD, J., dissent.

JOHN MAUZY PITTMAN, Chief Judge, dissenting. A timely notice of appeal is a jurisdictional requirement. *See Stacks v. Marks*, 354 Ark. 594, 127 S.W.3d 483 (2003). Because I do not believe that this court has jurisdiction, I respectfully dissent from the majority's opinion holding otherwise.

The majority holds that the judgment filed by facsimile on November 3 was ineffectual because no "hard copy" of the judgment was ever filed. That cannot be the law. Although it is true that Administrative Order No. 2 uses the term "shall," it does not specifically provide any sanction for failure to file the "hard copy." The reporter's notes to the administrative order makes this clear when it provides, in pertinent part, that "[t]o ensure the permanency of official court records, the original judgment . . . must be substituted for the facsimile copy within fourteen days of transmission, but this step does not have any bearing on the effectiveness of the faxed document or the time for taking an appeal." This note is directly on point but is given short shrift by the majority. I recognize that the reporter's notes are not binding.

Nevertheless, they express the Arkansas Supreme Court's intention when the administrative order was promulgated, an intention that is not carried out by the majority's decision in this case.

The order and judgment were filed by facsimile on November 3, 2005. Administrative Order No. 2 clearly states that the date of the fax-filed order will govern all appeal-related deadlines. Francis did not file her notice of appeal until December 9, 2005, more than thirty days after the order and judgment were entered. Therefore, the appeal is untimely as to the November 3 order, and we are without jurisdiction over it.

Given that the faxed order of November 3 is unquestionably valid, the only timely appeal is from the order of November 10. The only difference between the two orders is that the latter corrected the rate of post-judgment interest from six percent to ten percent. None of the issues on appeal, however, relate to the rate of interest; all of appellant's arguments are directed toward provisions contained in the November 3 judgment. In order to find that this court has jurisdiction to consider the arguments raised, it would be necessary to say that the change of the interest rate in the November 10 judgment was an amendment of the fax-filed November 3 judgment, instead of a correction of a clerical error, and that appellant's time to file her notice of appeal ran from November 10.

In *Luckes v. Luckes*, 262 Ark. 770, 772, 561 S.W.2d 300, 302 (1978), the supreme court held that a true clerical error is "essentially one that arises not from an exercise of the court's judicial discretion but from a mistake on the part of its officers (or perhaps someone else)." Here, the correct rate of interest was not litigated by the parties; indeed, it was dictated by statute. *See* Ark. Code Ann. § 16-65-114 (Repl. 2005). Therefore, the November 10 order is properly considered a *nunc pro tunc* judgment. However, an appeal from a *nunc pro tunc* order is not from the original order or judgment, but from the order purporting to correct it. *Kindiger v. Huffman*, 307 Ark. 465, 821 S.W.2d 33 (1991). Such an appeal contests the propriety of the corrections made and may not be used to challenge issues that should have been appealed from the original order but were not. *See id.* Other cases support this conclusion. *See, e.g., Holt Bonding Co., Inc. v. State*, 353 Ark. 136, 114 S.W.3d 179 (2003) (holding that a change in the name of the party against whom a judgment was awarded from "Exit Bail Bond Company" to a judgment against "Holt Bonding Company" was a clerical mistake, subject to correction by *nunc pro tunc* order);

*Southern Farm Bur. Cas. Ins. Co. v. Robinson*, 238 Ark. 159, 379 S.W.2d 8 (1964) (holding that correction of amount on which post-judgment interest was computed was accomplished by a *nunc pro tunc* order); *Kelly v. Morrison*, 83 Ark. App. 125, 118 S.W.3d 155 (2003) (holding that modification of order setting aside a deed so as to provide a reference for the deed being set aside was a clerical change).

Because the faxed order of November 3 was effectual, because no timely appeal was taken from that order, and because the issues presented are outside the scope of an appeal from the *nunc pro tunc* order of November 10, we lack jurisdiction. I respectfully dissent and would dismiss the appeal.

BIRD, J., joins in this opinion.