Selective Insurance Company of New York and SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, Plaintiffs,

against
St. Catherine's Center for Children, and JANE DOE, an infant, by her Parents and Natural Guardians, JOHN and MARY DOE, individually and as interested parties, Defendants.


907197-17

APPEARANCES:
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Attorneys for Plaintiffs
(Michael J. Marone and Eric G. Siegel, of counsel)
Brookfield Place
225 Liberty Street, 36th Floor
New York, New York 10281
DuCharme, Clark & Sovern, LLP
Attorneys for St. Catherine's Center for Children
(Cheryl L. Sovern and John W. Clark, of counsel)
10 Maxwell Drive, Suite 205
Clifton Park, New York 12065
Sovern Law, PLLC
Attorneys for St. Catherine's Center for Children
(Cheryl L. Sovern, of counsel)
100 Saratoga Village Boulevard
Building 37, Suite 37L
Malta, New York 12020


Richard M. Platkin, J.

This is an action brought by plaintiffs Selective Insurance Company of New York and Selective Insurance Company of South Carolina (collectively, "Selective") for, among other things, rescission of an insurance policy issued to defendant St. Catherine's Center for Children ("St. Catherine's") that provided abuse and molestation coverage, including prior acts coverage. Selective alleges that St. Catherine's materially misrepresented and fraudulently concealed allegations of abuse and molestation by its employees when applying for this coverage.
Discovery is complete, and a trial-term note of issue has been filed. Selective now moves pursuant to CPLR 3212 for an order: (1) rescinding and declaring void ab initio the abuse and molestation coverage written for St. Catherine's, including the prior acts endorsement; (2) determining that St. Catherine's engaged in, and is liable for, common-law fraud; (3) declaring that Selective does not have a duty to defend or indemnify St. Catherine's in an underlying action for sexual molestation that is pending in this Court; and (4) dismissing St. Catherine's counterclaim for declaratory relief. St. Catherine's opposes Selective's motion and cross-moves pursuant to CPLR 3212 for the summary dismissal of plaintiffs' complaint and a declaration that Selective is obliged to defend and indemnify St. Catherine's in the underlying action.
BACKGROUND
St. Catherine's is a social services organization located in Albany, New York that provides services to children and their families. Among other programs, St. Catherine's operates a day treatment program that serves elementary school students with behavioral and special needs that cannot be met in a traditional school setting.
A. The Policy
Selective issued a commercial insurance policy to St. Catherine's ("Policy") on June 21, 2016 that provided prospective coverage for abuse and molestation claims (see NYSCEF Doc No. 2 ["Complaint"], ¶¶ 5-7).
St. Catherine's applied for the Policy through its independent agent, Rose & Kiernan ("R & K") (see id., ¶ 6). As part of the application process, R & K submitted to Selective, on March 1, 2016, an application entitled "HUMAN SERVICES — COMPREHENSIVE APPLICATION" (NYSCEF Doc No. 55 ["Application"]). In Section VI of the Application, entitled "Abuse and Molestation," St. Catherine's represented that it carried abuse and molestation coverage from a different carrier (id., p. 5). St. Catherine's then answered "no" to Question 12, which asked whether "any incidents resulted in an allegation of sexual abuse" (id.).
Sean Leary is a Selective underwriter who was involved in issuing the Policy. On June 23, 2016, he spoke with R & K regarding "a potential need for abuse or molestation prior acts coverage for St. Catherine's because [its] insurance program was going to switch from a claims made coverage to occurrence based coverage" (NYSCEF Doc No. 53 ["Leary Aff."], ¶ 10). On the same date, Leary contacted Nancy Adams of Selective to inquire whether the insurer was authorized to write prior acts coverage in New York (see id., ¶ 11), noting that the underwriting guidelines did not authorize this type of coverage (see id., ¶¶ 12-17). Adams ultimately advised Leary that Selective could issue prior acts coverage under limited circumstances, but cautioned that "[i]f the insured has any incidents that they are aware [of,] [Selective] should not provide [the retroactive coverage for] prior acts" (NYSCEF Doc. 57, p. 4).
On July 8, 2016, R & K informed Leary that St. Catherine's did not require prior acts coverage, as "[i]t is being picked up on the prior policy" (id., p. 3). Leary understood this to [*2]mean that St. Catherine's had secured a supplemental extended reporting period ("SERP") from the prior carrier (see Leary Aff., ¶ 20).[FN1]
Based on the information received from R & K and the representations made by St. Catherine's, Selective issued the Policy on July 15, 2016 (see id., ¶ 21; NYSCEF Doc No. 59 ["Policy"]).[FN2]

B. The Prior Acts Endorsement
R & K advised Leary on August 31, 2016 that St. Catherine's did, in fact, require prior acts coverage for abuse and molestation dating back to 2009 (see Leary Aff., ¶ 22; NYSCEF Doc No. 60). "Because Selective did not underwrite prior acts abuse or molestation coverage in any state, including New York, Selective determined that the only way to accommodate St. Catherine's request was to create a manuscript endorsement to be approved through the New York Free Trade Zone" (Leary Aff., ¶ 23).
Prior to agreeing to extend retroactive coverage, Selective requested additional information from St. Catherine's. In this connection, Christopher Greagan of R & K wrote to Leslie Siegard, the chief financial officer of St. Catherine's, on September 22, 2016 to advise of the "need to document to Selective that [St. Catherine's] did not have any Sexual Misconduct claims from 9/1/2009 to the present" (NYSCEF Doc No. 78). On September 23, 2016, Siegard gave the following certification on behalf of St. Catherine's: "I certify that there have been no losses, accidents, violations or circumstances that might give rise to a sexual misconduct claim under the [prior] insurance policy . . . from 12:01 am on 09/01/2009 to present" (NYSCEF Doc No. 79 ["Statement of No Loss"] [capitalization omitted, emphasis added]).
John Willenborg, the senior Selective manager involved in underwriting the prior acts endorsement, emailed R & K on November 30, 2016 to further discuss the requested coverage, which is said to be of a type that Selective did not write anywhere in the United States (see NYSCEF Doc No. 64 ["Willenborg Aff."], ¶ 5; NYSCEF Doc No. 66). The process of drafting the custom "manuscript endorsement" for approval by the New York Free Trade Zone was complex and continued into the first quarter of 2017 (Willenborg Aff., ¶ 7).
On March 10, 2017, Willenborg received additional information from R & K regarding the scope of risks involved in writing the prior acts coverage (see id., ¶ 8). Specifically, the communication confirmed that clergy members did not provide direct care or services at St. Catherine's (see id., ¶ 9; NYSCEF Doc No. 67). However, "[a]s a result of Selective's ongoing concerns regarding not only reported claims, but also the significant risk for events or allegations occurring between 2009 and 2016 that could lead to future claims or lawsuits, Selective required St. Catherine's to execute a more detailed certification of no known loss or potential loss" (Willenborg Aff., ¶ 10; see NYSCEF Doc No. 68). 
On March 20, 2017, Willenborg informed R & K that Selective required a supplemental signed letter of no loss (see Willenborg Aff., ¶ 13). The precise language required by the insurer [*3]was sent to R & K on March 22, 2017 (see NYSCEF Doc Nos. 68, 70), and the executed certification (see NYSCEF Doc No. 71 ["No-Loss Letter"]) was returned to Selective on March 27, 2017.
The No-Loss Letter, which appears on the letterhead of St. Catherine's and is signed by its executive director, Frank Pindiak, reads, in pertinent part:
As you know, after the inception of the Policy, we requested that Selective provide "sexual misconduct" prior acts coverage . . . for the period from September 2009 through the inception date of the Policy. I understand that Selective has agreed to issue this coverage, conditioned upon receipt of the following certification from St. Catherine[']s.
On behalf of St. Catherine[']s, I hereby represent that St. Catherine[']s made a due diligence inquiry into whether there are any (i) claims, actions, lawsuits or demands for which St. Catherine[']s or a third party may potentially seek coverage under the Policy; and/or (ii) facts, events, actions, inactions or circumstances that may lead to claims, actions, lawsuits or demands for which St. Catherine[']s or a third party may potentially seek coverage under the Policy.
Based upon this due diligence inquiry, as of the date of this letter, St. Catherine's is not aware of any (i) claims, actions, lawsuits or demands for which St. Catherine's or a third party may potentially seek coverage under the Policy, or (ii) facts, events, actions, inactions or circumstances that may lead to claims, actions, lawsuits or demands for which St. Catherine's or a third party may potentially seek coverage under the Policy.
St. Catherine's acknowledges that the statements and representations made to Selective in this communication are material to Selective's decision to issue the Policy, with the requested "prior acts". St Catherine's further acknowledges that Selective reserves all rights to rescind the Policy, whether in whole or in part, based on its discovery of contrary information (id., pp. 1-2).
On May 24, 2017, Willenborg informed R & K that Selective's regulator had approved the language of the manuscript endorsement (see Willenborg Aff., ¶ 18). Based on the information provided by St. Catherine's, including the Statement of No Loss dated September 23, 2016 and the No-Loss Letter dated March 24, 2017, Selective reissued the Policy to include a "Sexual Misconduct Liability Prior Acts Endorsement" (NYSCEF Doc No. 73 ["Endorsement"]).
C. Jane Doe's Claim
In August 2017, St. Catherine's submitted a claim to Selective seeking defense and indemnification in an action filed against it in this Court (see Index No. 905151-17 ["Underlying Action"]). The Underlying Action involves allegations by a former student (Jane Doe) that she was the victim of sexual abuse and/or inappropriate sexual contact by a St. Catherine's staff member (James Roe) between February 1, 2016 and February 8, 2016 (see Complaint, ¶¶ 29-31; see also NYSCEF Doc No. 5 ["UA Complaint"]). Notably, the occurrence giving rise to Jane Doe's allegations predates the effective date of the Policy, and, therefore, potentially is subject to coverage only under the prior acts Endorsement (see Complaint, ¶ 32).
Selective's review of the UA Complaint disclosed that the Justice Center for the Protection of People with Special Needs ("Justice Center") had investigated Jane Doe's allegations and found them to be substantiated (see id., ¶ 33). Selective also learned that St. [*4]Catherine's employees had reported Jane Doe's allegations to the Albany Police Department ("APD") and the Justice Center on March 3 and 4, 2016, respectively (see id., ¶ 40). At Selective's request, St. Catherine's provided the insurer with a copy of the Justice Center's investigative report (see id., ¶ 36; see also NYSCEF Doc No. 6 [Justice Center's report]).
Through its internal investigation, Selective eventually determined that St. Catherine's "knew and could have reasonably foreseen or anticipated that Roe's sexual misconduct . . . might become the basis of a claim or suit" (Complaint, ¶ 49). Selective further determined that St. Catherine's "knew that Roe's sexual misconduct was the subject of the Justice Center's and the [APD]'s investigation when [St. Catherine's] submitted the two no known loss letters" (id., ¶ 50).
D. This Action
Following St. Catherine's refusal to voluntarily rescind the Endorsement (see id., ¶¶ 51-52), Selective commenced this action, seeking (1) a judgment declaring the abuse and molestation coverage provided by the Policy and Endorsement to be rescinded and void ab initio, (2) monetary damages for St. Catherine's alleged fraud and (3) a declaration that Selective is under no duty to defend or indemnify St. Catherine's in the Underlying Action (see id., ¶¶ 54-79). St. Catherine's joined issue and interposed a counterclaim for a contrary declaration (see NYSCEF Doc No. 89 ["Answer"]).
Discovery is complete, and a note of issue was filed on July 18, 2019 (see NYSCEF Doc No. 48). The parties' motions for summary judgment were submitted as of October 15, 2019, oral argument was held on November 26, 2019, and this Decision, Order & Judgment follows.
ANALYSIS
A. Legal Principles
1. Summary Judgment
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient proof in admissible form to eliminate any genuine material issues of fact from the case (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). If the movant meets its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of disputed material facts or a legal defense to the claim (see id.). On such a motion, all evidence must be viewed in the light most favorable to the non-movant (see Branham v Loews Orpheum Cinemas, Inc., 8 NY3d 931, 932 [2007]).
2. Rescission
"An insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement to making the contract and the misrepresentation was material" (Curanovic v New York Cent. Mut. Fire Ins. Co., 307 AD2d 435, 436 [3d Dept 2003], citing Insurance Law § 3105 [a], [b]; see Security Mut. Ins. Co. v Perkins, 86 AD3d 702, 703-704 [3d Dept 2011]; Varshavskaya v Metropolitan Life Ins. Co., 68 AD3d 855, 856 [2d Dept 2009], lv denied 14 NY3d 710 [2010]; Taradena v Nationwide Mut. Ins. Co., 239 AD2d 876, 877 [4th Dept 1997] ["(M)aterial misrepresentations . . . if proven, (will) void the . . . insurance policy ab initio"]).
A misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract" (Insurance Law § 3105 [b] [1]). A "material misrepresentation, even if innocent or unintentional, is sufficient to warrant a rescission of the policy" (McLaughlin v Nationwide Mut. Fire Ins. Co., 8 AD3d 739, 740 [3d Dept 2004]). "The materiality of an applicant's misrepresentation is ordinarily a factual question [*5]unless the insurer proffers clear and substantially uncontradicted evidence concerning materiality, in which event the matter is one of law for the court to determine" (Carpinone v Mutual of Omaha Ins. Co., 265 AD2d 752, 754 [3d Dept 1999]). "In determining the question of materiality, evidence of the practice of the insurer . . . with respect to the acceptance or rejection of similar risks shall be admissible" (Insurance Law § 3105 [c]).
B. Misrepresentations of Fact
1. The Policy
Selective submits proof of a misrepresentation of fact made by St. Catherine's in applying for the Policy, which provided prospective abuse and molestation coverage as of June 21, 2016. 
Specifically, Question 12 of Section VI of the Application asked whether "any incidents resulted in an allegation of sexual abuse" (Application, p. 5 [emphasis added]). St. Catherine's answered "no" (id.), but Siegard testified in her deposition that she was aware of incidents and allegations of sexual abuse, physical abuse and/or sexual molestation at St. Catherine's for the period from 2012 through 2016 (see NYSCEF Doc No. 80 ["Siegard EBT"], pp. 21-22 ["less than ten"]). In addition, Pindiak acknowledged there were at least eight allegations of abuse or molestation that had been substantiated by the Justice Center in recent years, including five incidents that had been substantiated prior to March 1, 2016, when the Application was submitted to Selective (see NYSCEF Doc No. 82 ["Pindiak EBT"], pp. 30-36).
By March 4, 2016, St. Catherine's also was aware of Jane Doe's allegations (see id., pp. 25-26), which had been reported to APD and the Justice Center by St. Catherine's employees. Although Pindiak testified that he did not consider "a teacher groping a female student's chest. . . to be sexual abuse," he did acknowledge that it "[p]ossibly" could be characterized as "sexual misconduct" (id., p. 26). And while St. Catherine's learned of this incident after the Application had been submitted to Selective, "[a]n insured cannot remain silent while cognizant that [its] insurance application contains misleading or incorrect information" (North Atl. Life Ins. Co. of Am. v Katz, 163 AD2d 283, 284 [2d Dept 1990]; see also Curanovic, 307 AD2d at 437 ["Additionally, when (the applicant) discovered inaccuracies shortly after leaving (the insurance agent's) office, he failed to comply with his duty to correct that information."]).
The Court therefore concludes that Selective's proof establishes, prima facie, the falsity of St. Catherine's answer to Question 12.
In opposition, St. Catherine's argues principally that it answered an ambiguous question in good faith. St. Catherine's observes that latter portions of Question 12 go on to inquire whether "the case [was] settled" or "taken to trial" (Application, p. 5), thereby suggesting that the inquiry was limited to incidents that resulted in claims of sexual abuse. 
The Court does not find this argument to be persuasive. The language of the first portion of Question 12 called for an answer to a simple and direct question: whether there were any "incidents" that resulted in "allegation[s] of sexual abuse" against St. Catherine's (id.). The language of this yes-no question is "so plain and intelligible that any applicant can readily comprehend [it]" (Nadel v Manhattan Life Ins. Co., 211 AD2d 900, 901 [3d Dept 1995]), and the subsequent sub-questions inquiring as to the disposition of any claims or lawsuits arising from allegations of sexual abuse did not serve to create an ambiguity.
Further, insofar as St. Catherine's relies upon its alleged good-faith belief that Question 12 was inquiring about claims and losses, rather than incidents and allegations, the law is well [*6]settled that "an insurer may rescind a policy if the insured made a material misrepresentation of fact even if the misrepresentation was innocently or unintentionally made" (Estate of Gen Yee Chu v Otsego Mut. Fire Ins. Co., 148 AD3d 677, 678 [2d Dept 2017], lv denied 29 NY3d 911 [2017]; see also McLaughlin, 8 AD3d at 740; Curanovic, 307 AD2d at 436).[FN3]

Accordingly, the Court concludes as a matter of law that St. Catherine's made a misrepresentation of fact in applying for the Policy.
2. Misrepresentations Made in Securing the Endorsement
Selective also submits proof of misrepresentations made by St. Catherine's in applying for the Endorsement, which provided retroactive coverage for prior acts of abuse or molestation dating back to 2009.
First, St. Catherine's provided Selective with a certification, executed by Siegard on September 23, 2016, representing that there had been "no losses, accidents, violations or circumstances that might give rise to a sexual misconduct claim . . . from 12:01 am on 09/01/2009 to present" (Statement of No Loss [capitalization omitted, emphasis added]). Siegard testified in her deposition, however, that she was aware of as many as nine incidents involving allegations of sexual abuse, physical abuse or sexual molestation from 2012 to 2016 (see Siegard EBT, pp. 21-22). And these were just the incidents and allegations with which Siegard personally was familiar; she did not conduct any type of investigation or inquiry prior to signing the Statement of No Loss, despite having ready access to the books and records of St. Catherine's (see id., pp. 48-50).
Second, the No-Loss Letter, executed by St. Catherine's president on March 24, 2017, contains misrepresentations of fact. On behalf of St. Catherine's, Pindiak represented that, following a "due diligence inquiry, . . . St. Catherine's is not aware of any . . . facts, events, actions, inactions or circumstances that may lead to claims, actions, lawsuits or demands for which St. Catherine's . . . may potentially seek coverage under the Policy" (emphasis added).
Pindiak's own testimony confirms, however, that St. Catherine's was aware of at least eight allegations of abuse or molestation that occurred prior to March 1, 2016, five of which had been substantiated by the Justice Center (see Pindiak EBT, pp. 30-36). And by March 24, 2017, when the No-Loss Letter was issued, the number of substantiated incidents had increased to 13 — just for the three-year period from 2015 through 2017 (see id., pp. 30-42). In fact, Pindiak received a letter from the Justice Center on March 10, 2017 substantiating Jane Doe's allegations (see NYSCEF Doc No. 74; see also Pindiak EBT, pp. 44, 47).
Accordingly, Selective's proof establishes, prima facie, that St. Catherine's made misrepresentations of fact in applying for the Endorsement.
In opposition, St. Catherine's emphasizes portions of Siegard's deposition testimony and Pindiak's affidavit testimony in which they rely upon their subjective understandings of the [*7]certifications and their alleged belief that none of the prior allegations of abuse or molestation made by St. Catherine's students would ripen into actual claims or losses (see Siegard EBT, pp. 50-51; NYSCEF Doc No. 98 ["Pindiak Aff."], ¶¶ 41, 60). 
However, the language of the certifications given by Siegard and Pindiak was "so plain and intelligible that any applicant [could] readily comprehend [it]" (Nadel, 211 AD2d at 901),[FN4]
and their alleged good-faith understanding of the certifications has no bearing on the issue of rescission for material misrepresentation (see Estate of Gen Yee Chu, 148 AD3d at 678; McLaughlin, 8 AD3d at 740).
The Court therefore concludes that Selective has established as a matter of law that St. Catherine's made misrepresentations of fact in applying for the Policy and Endorsement.
C. Materiality of the Misrepresentations
1. The Policy
In seeking to demonstrate the materiality of St. Catherine's misrepresentation on the Application, Selective first cites the investigation and evaluation of St. Catherine's operations and risks undertaken by its underwriter, Sean Leary (see NYSCEF Doc No. 93, pp. 15-16). Among other things, Leary conducted a "pre-quote safety management visit" on April 21, 2016 (see NYSCEF Doc No. 56, p. 1). In transmitting his recommendations to R & K, Leary emphasized that any recommendations concerning abuse and molestation, including the absence of appropriate policies and procedures, were critical and should receive the immediate attention of St. Catherine's (see id., p. 7).
Selective further asserts that it would have declined to issue abuse and molestation coverage to St. Catherine's had it been made aware of the eight allegations of abuse or molestation reported to the Justice Center between 2015 and March 1, 2016. In this regard, Selective asserts that St. Catherine's actual knowledge of losses conflicts with provisions of the Social Services Reference Guide that requires a potential insured to not have sustained any claims for a period of five years (see Leary Aff., ¶¶ 31-32; NYSCEF Doc No. 58 ["Guide"], p. SEL004543 ["There should be no abuse or molestation claims over the most recent 5 year experience period."]). Thus, according to Leary, "Selective would not agree to prospectively insure a risk that revealed . . . allegations or events that could result in a future loss or lawsuit" (Leary Aff., ¶ 31).
The Court concludes that Selective has failed to meet its initial burden of establishing the materiality of St. Catherine's misrepresentation on the Application as a matter of law. The underwriting guidelines cited by Selective require that a potential insured not have sustained any claims for a period of five years, but the misrepresentation made on the Application did not involve claims or losses; rather, St. Catherine's concealed incidents giving rise to allegations of [*8]abuse or molestation.[FN5]
There is nothing in the underwriting guidelines precluding coverage for an applicant against whom there were prior allegations of abuse or molestation that did not ripen into claims or losses.[FN6]

In the absence of "underwriting guidelines" establishing that the insurer "would not have issued the [Policy] if the correct information had been disclosed in the applications" (Carpinone, 265 AD2d at 754), the remaining proof adduced by Selective regarding the Policy falls short of the "clear and substantially uncontradicted evidence concerning materiality" needed to remove this issue from the province of the trier of fact (id.).
2. The Endorsement
In seeking to establish the materiality of the misrepresentations made in connection with the procurement of the retroactive Endorsement, Selective relies, first and foremost, on St. Catherine's express agreement and acknowledgment that the No-Loss Letter was highly material to the insurer's decision to underwrite retroactive abuse and molestation coverage and, in fact, was an express condition precedent to coverage.
Thus, the No-Loss Letter, executed on St. Catherine's behalf by its chief executive, recognizes and acknowledges that issuance of prior acts coverage is "conditioned upon [Selective's] receipt of . . . the [prescribed] certification by St. Catherine[']s" (No-Loss Letter, p. 1 [emphasis added]). St. Catherine's then "acknowledge[s] that the statements and representations made to Selective in [the No-Loss Letter] are material to Selective's decision to issue the Policy, with the requested prior acts [coverage]" (id.). "St. Catherine's further acknowledges that Selective reserves all rights to rescind the Policy, whether in whole or in part, based on its discovery of contrary information" (id., p. 2).[FN7]

Selective also relies upon the detailed fact affidavits of its underwriters (see Willenborg Aff.; Leary Aff.), as well as contemporaneous documentation regarding the process by which the manuscript Endorsement was underwritten, drafted and approved. In particular, when St. Catherine's requested the prior acts coverage through R & K, Leary was advised by Nancy Adams that Selective could write retroactive coverage, but "[i]f the insured has any incidents that [*9]they are aware we should not provide prior acts" (NYSCEF Doc No. 57, p. 4 [emphasis added]).[FN8]

This underwriting direction is consistent with analogous provisions of the Guide that require a professional seeking liability coverage for prior acts to provide a "'written and signed certification that there are no known incidents or circumstances that reasonably might give rise to a claim that have not been reported to the current carrier and disclosed under known losses or incidents'" (Willenborg Aff., ¶ 24, quoting Guide, p. SEL004550). "As a result of Selective's ongoing concerns regarding not only reported claims, but also the significant risk for events or allegations occurring [prior to the effectiveness of the Policy] that could lead to future claims or lawsuits, Selective required St. Catherine's to execute" the No-Loss Letter: "a more detailed certification of no known loss or potential loss" (id., ¶ 10).
In opposition, St. Catherine's argues principally that Selective's own admissions establish that the insurer lacks the required documentation of its underwriting practices to establish the materiality of the misrepresentations as a matter of law. 
According to St. Catherine's, Selective's moving papers make "a fatal admission in two ways" (NYSCEF Doc No. 117, p. 8). First, St. Catherine's cites Willenborg's averment that, "[b]ecause Selective had not previously issued prior acts abuse or molestation coverage in New York through the Free Trade Zone, there was no precedent or underwriting guidelines available" to draft and issue the Endorsement (Willenborg Aff., ¶ 20). St. Catherine's also relies upon Willenborg's averment that "the process undertaken to issue the [Endorsement] was not the subject of any underwriting manual or guideline," although Selective did look to adopt certain concepts, "such as obtaining detailed certifications of no known loss and no knowledge of facts or events that could result in a loss or lawsuit" (id., ¶ 22). St. Catherine's contends that these admissions of Selective's principal underwriter for the Endorsement negate a prima facie element of both the rescission claim and fraud claim — materiality — thereby defeating Selective's motion.
In making this argument, St. Catherine's places controlling weight on authorities holding that an insurer seeking to establish the materiality of a misrepresentation as a matter of law is "required to present documentation concerning its underwriting practices such as its underwriting manuals, rules or bulletins which pertain to insuring similar risks. The insurer's proof must establish that it would not have issued the same policies if the correct information had been disclosed in the applications" (Carpinone, 265 AD2d at 754). "Conclusory statements by insurance company employees, unsupported by documentary evidence, are insufficient to establish materiality as a matter of law" (Barkan v New York Schools Ins. Reciprocal, 65 AD3d 1061, 1064 [1st Dept 2009] [citation omitted]; see Carpinone, 265 AD2d at 755).
In the Court's view, St. Catherine's arguments would have force in the context of an off-the-shelf insurance product, like the Policy, that is subject to standardized underwriting guidelines (see part C 1, supra), but the Endorsement was a manuscript policy tailored to St. Catherine's unique needs. As stated by its principal underwriter, Selective had not previously issued prior acts abuse or molestation coverage in New York, so the insurer necessarily employed an individualized underwriting process that attempted to draw upon underwriting concepts employed elsewhere by Selective (see Willenborg Aff., ¶¶ 20-22).
In the context of this unusual case involving an application for a custom, high-risk insurance product, the Court concludes that blind reliance on the rule of Carpinone is unworkable, since the insurer never will be able to demonstrate the materiality of misrepresentations by reference to standardized underwriting guidelines or through proof of coverage decisions concerning other applicants (see Mutual Ben. Life Ins. Co. v JMR Electronics Corp., 848 F2d 30, 34 [2d Cir 1988] ["a contrary result would reward the practice of misrepresenting facts critical to the underwriter's task"]).[FN9]
In cases such as this, courts must instead remain focused on the ultimate question: whether the insurer has demonstrated, through competent and probative evidence (cf. Barkan, 65 AD3d at 1064), "that it would not have issued the same polic[y] if the correct information had been disclosed" (Carpinone, 265 AD2d at 754).
As argued by Selective, the materiality of the misrepresentations made by St. Catherine's to secure coverage for prior acts of abuse and molestation is apparent, admitted and predicated on a factual record that is substantially undisputed. Even apart from the No-Loss Letter, which represents St. Catherine's contemporaneous acknowledgment and agreement that such coverage expressly was "conditioned" upon St. Catherine's certification that it "is not aware of any . . . circumstances that may lead to claims,"[FN10]
it is self evident that known incidents or allegations of abuse or molestation are highly material to an insurer's decision to write retroactive coverage of the claims and losses arising therefrom (see e.g. Travelers Cas. & Sur. Co. of Am. v Gold, Scollar, Moshan, PLLC, 2018 WL 1508573, *9, 2018 US Dist LEXIS 46568, *25 [SD NY, Mar. 14, 2018, No. 14cv10106 (DF)] ["where the insurer presents uncontroverted evidence of a misrepresentation that is so significant that, from the very nature of the misrepresentation . . . , no rational juror could find that the insurer would have issued the policy had the truth been told, courts have held that the insurer need not produce evidence of its underwriting policies in order to demonstrate materiality"]; Continental Cas. Co. v Marshall Granger & Co., LLP, 6 F Supp 3d 380, 392-393 [SD NY 2014] ["Common sense dictates that it is simply impossible to believe that, had the full facts . . . been disclosed on the Application, (the insurer) would still have issued the Policy on the same terms. While in many cases the question of whether the insurer would have issued the policy on the same terms depends heavily on the insurer's precise underwriting practices, this is not such a case."], affd 695 Fed Appx 596 [2d Cir 2017]; see also Equitable Life Assur. Socy. of U.S. v O'Neil, 67 AD2d 883, 884 [1st Dept 1979]).
Moreover, the detailed factual affidavits of Selective's underwriters and the contemporaneous corroborating documentation adduced by Selective further serve to distinguish this case from Carpinone and other authorities relied upon by St. Catherine's (see Bleecker St. Health & Beauty Aids, Inc. v Granite State Ins. Co., 38 AD3d 231, 232 [1st Dept 2007]; see [*10]also Chicago Ins. Co. v Fasciana, 2006 WL 3714310, *6, 2006 US Dist LEXIS 90399, *18 [SD NY, Dec. 13, 2006, No. 04 Civ 7934 (LAP)] [underwriter's affidavit "is not a conclusory statement but sets out the facts and the conclusion to be drawn from those facts. No reasonable factfinder would find (the applicant's) misstatement . . . not to be material, and no reasonable factfinder would find that an insurance company would have issued the policy . . . had it known of the true facts."]).[FN11]

Based on the foregoing, the Court concludes that Selective has met its initial burden of demonstrating the materiality of the certifications made in the Statement of No Loss and the No-Loss Letter, and St. Catherine's has failed to raise a triable issue of fact in opposition.[FN12]

D. Fraud
Selective moves for partial summary judgment on its fraud claim, seeking a determination that St. Catherine's engaged in common-law fraud. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages" (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009] [citations omitted]).
For essentially the reasons stated above, the Court concludes that Selective has established as a matter of law that St. Catherine's induced Selective to issue the prior acts Endorsement through material misrepresentations of fact and that Selective actually and justifiably relied upon St. Catherine's misrepresentations.[FN13]
 The issue therefore becomes whether Selective also has established as a matter of law that St. Catherine's acted with an intent to defraud.
"Fraudulent intent, by its very nature, is rarely susceptible to direct proof and must be established by inference from the circumstances surrounding the allegedly fraudulent act" (Bashian & Farber, LLP v Syms, 173 AD3d 659, 661 [1st Dept 2019] [citation omitted]). Here, Selective has adduced powerful evidence that St. Catherine's knew of the falsity of the representations made in the Statement of No Loss and No-Loss Letter when the certifications were given.
Despite possessing personal knowledge of up to nine incidents of molestation or abuse at St. Catherine's from 2012 onward (see Siegard EBT, pp. 21-22), Siegard certified on September 23, 2016 that "there have been no . . . circumstances that might give rise to a sexual misconduct claim under the [prior] insurance policy from . . . 2009 to present" (Statement of No Loss [capitalization omitted, emphasis added]). Moreover, Siegard had ready access to the books and records of St. Catherine's, which disclosed at least five allegations of abuse or molestation that were substantiated by the Justice Center prior to her certification (see Pindiak EBT, pp. 30-36).[FN14]

Likewise, by March 24, 2017, when St. Catherine's certified that it was not aware of any circumstances that may lead to claims under the Endorsement, Pindiak knew of at least 13 substantiated allegations of abuse or molestation (see id., pp. 30-42). And unlike Siegard's certification, Pindiak expressly represented to Selective that "St. Catherine[']s made a due diligence inquiry into whether there are any facts . . . or circumstances that may lead to claims, actions, lawsuits or demands for which St. Catherine[']s or a third party may potentially seek coverage under the [Endorsement]" (No-Loss Letter, p. 1). 
Moreover, Selective identifies a compelling motive for St. Catherine's to have concealed its history of abuse and molestation allegations. The transition from claims-made coverage to an occurrence-based Policy, together with the unwillingness of St. Catherine's previous insurer to issue a SERP, left St. Catherine's without coverage for prior acts of abuse that had not ripened into claims or suits. Absent retroactive coverage of the type written by Selective, St. Catherine's would face potential uncovered liability for allegations of abuse or molestation dating back almost a decade. This coverage gap is particularly problematic for St. Catherine's, since the children it serves are entitled to the benefit of a generous tolling provision that allows them to bring suit years after reaching the age of majority (see CPLR 208 [b]).[FN15]

Thus, Selective has demonstrated, prima facie, that Siegard and Pindiak made material misrepresentations of fact to Selective on behalf of St. Catherine's with actual knowledge of the falsity of their representations and under circumstances otherwise supporting the inference that St. Catherine's possessed the requisite intent to defraud. Accordingly, the burden shifts to St. Catherine's to raise a triable issue of fact.
In this regard, St. Catherine's cites Siegard's deposition testimony that she understood the Statement of No Loss to mean that St. Catherine's "had not submitted any claims to [an] [*11]insurance company, that no Justice Center allegations had resulted in submissions to [St. Catherine's prior] insurance company" (Siegard EBT, p. 50, see also id., pp. 46-47). While recognizing that her claimed understanding of the Statement of No Loss was not consistent with its plain language, Siegard maintains that she read the certification at the time to refer solely to "claims" — "[c]laims being submitted to the insurance company" (id., pp. 50-51).
Relatedly, St. Catherine's emphasizes that the email from R & K requesting the certification from Siegard cited the "need to document to Selective that [St. Catherine's] did not have any Sexual Misconduct claims from 9/1/2009 to the present" (NYSCEF Doc No. 78, p. 2). The same email explained that R & K was unable to share certain loss runs "show[ing] [St. Catherine's] had no claims" because the runs included information concerning another entity (see id.).
St. Catherine's similarly maintains that Pindiak's misrepresentations in the No-Loss Letter were unintentional and made in good faith. In this connection, St. Catherine's cites Pindiak's unfamiliarity with insurance issues at the time (see Pindiak EBT, p. 28) and his claimed subjective belief that none of the substantiated allegations of abuse or neglect would become a claim or loss (see Pindiak Aff., ¶ 60). In this connection, St. Catherine's also cites the fact that numerous incidents of abuse and molestation had been reported to the Justice Center, but none of these incidents resulted in claims or losses (see id.).
Given the existence of factual disputes concerning whether Siegard and Pindiak knew of the falsity of their representations to Selective when they were made, the Court concludes that the issue of fraudulent intent is not amenable to summary resolution.
E. Coverage in the Underlying Action
Finally, Selective seeks a declaration that it is not obliged to defend or indemnify St. Catherine's in the Underlying Action.
1. Legal Principles
An insurer has a duty to defend "whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage'" (Frontier Insulation Contrs. v Merchants Mut. Ins. Co., 91 NY2d 169, 175 [1997], quoting Fitzpatrick v American Honda Motor Co., 78 NY2d 61, 67 [1991]). The insurer's duty to defend is broader than its duty to indemnify, and to avoid the defense of an action, the insurer must demonstrate that the claims are not "even potentially" covered (Lombardi, Walsh, Wakeman, Harrison, Amodeo & Davenport, P.C. v American Guar. & Liab. Ins. Co., 85 AD3d 1291, 1293 [3d Dept 2011]). 
"An insurer attempting to avoid coverage based upon an exclusion bears a heavy burden of demonstrating that the underlying complaint places the situation wholly within the exclusion, the exclusion is clear and subject to only one reasonable interpretation defeating coverage, and there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured" (id. at 1295 [internal quotation marks and citation omitted]).
2. Analysis
The Underlying Action was commenced on August 4, 2017 and is based on a February 2016 occurrence (see UA Complaint). As the occurrence giving rise to the Underlying Action took place prior to the June 21, 2016 effective date of the Policy (see id., ¶ 4), it falls only within the scope of coverage potentially afforded under the Endorsement.
For the reasons stated above, the Court concludes that the Endorsement is void ab initio as a result of the material misrepresentations made to Selective in connection with the procurement of the coverage (see Insurance Law § 3105; Taradena, 239 AD2d at 877). Accordingly, Selective is entitled to a declaration that it is under no duty to defend or indemnify St. Catherine's in the Underlying Action brought by Jane Doe.[FN16]

CONCLUSION
Based on the foregoing, Selective has demonstrated its entitlement to partial summary judgment on the portion of its claims seeking declarations that (1) the prior acts Endorsement is void ab initio due to St. Catherine's material misrepresentations of fact, and (2) Selective has no duty to defend or indemnify St. Catherine's in the Underlying Action as a result of the rescission of the Endorsement.[FN17]
The remaining issues must await trial.
Accordingly, it is
ORDERED, ADJUDGED and DECREED that the prior acts Endorsement is void ab initio and of no legal force or effect; and it is further
ORDERED, ADJUDGED and DECREED that Selective does not have a duty to defend or indemnify St. Catherine's in the Underlying Action; and it is further
ORDERED that Selective's motion for summary judgment is granted to the extent [*12]indicated above, and the motion is denied in all other respects; and it is further
ORDERED that St. Catherine's cross motion for summary judgment is denied; and it is further
ORDERED that the parties shall appear for a conference on January 28, 2020 at 10:30 a.m. to, among other things, discuss settlement of the case and select a trial date; and finally it is
ORDERED that at least five (5) days prior to the conference, counsel for each party shall file and serve the ADR certification required by Rule 10 of the Commercial Division.
This constitutes the Decision, Order & Judgment of the Court, the original of which is being uploaded to NYSCEF for electronic entry by the Albany County Clerk. Upon such entry, counsel for plaintiff shall promptly serve notice of entry on all parties entitled to such notice.
Dated: December 11, 2019
Albany, New York
___________________________
RICHARD M. PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 52-94, 97-129; and
Transcript of Oral Argument, held on November 26, 2019.



Footnotes

Footnote 1:Under the Social Services Reference Guide, a New York insured that decides to move from a claims-made policy to an occurrence-based policy "will need to purchase a [SERP] from the preceding carrier. . . . [Selective] will not offer prior acts coverage" (NYSCEF Doc No. 58, p. SEL004544).

Footnote 2:The Policy subsequently was renewed for 2017-2018.

Footnote 3:At oral argument, St. Catherine's counsel argued that an "incident" means an allegation "that actually has a fact basis" (Transcript, pp. 6-7). According to St. Catherine's, even a substantiated report from the Justice Center would not suffice to give rise to an incident within the meaning of the Policy (see id., p. 7). In construing the Application, the Court rejects St. Catherine's attempt to read these terms in anything other than their ordinary sense (see Black's Law Dictionary [11th ed 2019], incident, allegation).

Footnote 4:Contrary to St. Catherine's suggestion, no special legal background is required to understand the meaning of the certifications given by Siegard and Pindiak (see Transcript, pp. 10-11), and neither St. Catherine's status as a provider of services to special needs children nor its status as a mandated reporter of child abuse can serve to alter the plain language and meaning of the insurance certifications that they gave on behalf of St. Catherine's.

Footnote 5:Pursuant to the Guide, the presence of claims in the preceding five years would not amount to an automatic disqualifier; rather, it would trigger a referral to Selective's Strategic Business Unit ("SBU") (see Guide, p. SEL004543).

Footnote 6:At oral argument, Selective argued that it "should not be saddled with the fact that St. Catherine's had incidents, events [and] actions . . . that were not reported to its prior insurer" (Transcript, p. 16). Nonetheless, there is nothing in the underwriting guidelines that would establish the materiality of reported incidents and allegations that did not ripen into claims or losses.

Footnote 7:In addition, Selective cites Pindiak's acknowledgment of the materiality of the representations made in the No-Loss Letter (see Pindiak EBT, p. 24; see also NYSCEF Doc Nos. 121-122 [producing Pindiak and Siegard for depositions as corporate designees of St. Catherine's]; NYSCEF Doc No. 83, request 23 and response 4).

Footnote 8:St. Catherine's attempts to dismiss Adams's email as "self-serving" (Transcript, p. 27), but it is a contemporaneous part of the insurance procurement record (cf. Pindiak Aff.).

Footnote 9:The Court rejects St. Catherine's suggestion that Selective should have prepared custom underwriting guidelines for its manuscript Endorsement before writing the manuscript coverage (see Transcript, pp. 28-29).

Footnote 10:While Selective has not cited any authority indicating that such a contractual provision entitles the insurer to a per se finding of materiality, the No-Loss Letter constitutes a powerful admission of materiality by St. Catherine's, as well as contemporaneous evidence that Selective conditioned issuance of the Endorsement upon the certifications made by Siegard and Pindiak.

Footnote 11:Contrary to St. Catherine's contention, the Court sees no incongruity between or among (i) the statement by Adams that Selective should not write prior acts coverage on a manuscript basis "[i]f the insured has any incidents that they are aware [of]" (NYSCEF Doc. 57, p. 4), (ii) the absence of underwriting guidelines governing the prior acts coverage (see Wallenborg Aff., ¶ 22) and (iii) Selective's use of the concepts employed in underwriting similar types of retroactive coverage (see id.).

Footnote 12:In so concluding, the Court necessarily rejects St. Catherine's suggestion that Selective's alleged "motivat[ion] to help R & K fix its mistake" in transitioning St. Catherine's to a new insurer has any bearing on the materiality of Pindiak and Siegard's misrepresentations (Pindiak Aff., ¶ 31; see also id., ¶¶ 24-30). Even assuming that Selective was motivated to assist R & K, one of its "top partners," and that St. Catherine's was a "key client" of R & K (NYSCEF Doc No. 100, p. 3), the record shows, at most, that Selective relied upon these business relationships in deciding to undertake the complex and time-consuming task of "construct[ing] coverage" of an insurance product not offered in New York "via a manuscript endorsement" (id., p. 2). Despite having conducted extensive discovery in this action and Selective having laid bare its underwriting record, there simply is no evidence that Selective's relationship with R & K played any role in the insurer's underwriting decisions with regard to the Endorsement (see e.g. id.).

Footnote 13:Given that the materiality of the misrepresentation on the Application presents an issue for trial, the Court will not consider that representation in evaluating the fraud claim.

Footnote 14:Neither Siegard nor anyone else at St. Catherine's conducted any type of inquiry before certifying that St. Catherine's was unaware of circumstances that might give rise to a sexual misconduct claim (see Siegard EBT, pp. 48-51).

Footnote 15:As observed at oral argument, this tolling provision undercuts any reasonable reliance by St. Catherine's on its lack of recent losses (see Transcript, pp. 12-13).

Footnote 16:In any event, coverage also is barred by the plain language of the Endorsement, which requires, among other things, that "[t]he insured did not know or could not have reasonably foreseen or anticipated that such a 'sexual misconduct' might become the basis of a claim or suit" (Endorsement, p. SEL00955). Regardless of Pindiak and Siegard's claimed subjective belief that none of the numerous allegations of sexual abuse or molestation against St. Catherine's, including Jane Doe's, would ripen into claims, the quoted portion of the Endorsement is cast in objective terms: whether a reasonable insured could have foreseen or anticipated that the prior incidents or allegations "might become the basis of a claim or suit" (id.). Objectively, there can be no doubt that a lawsuit based upon Jane Doe's substantiated allegations of sexual abuse was reasonably foreseeable and could have been anticipated by a reasonable insured in the position of St. Catherine's.

Footnote 17:In its written submissions, St. Catherine's contends that there are numerous disputed questions of fact regarding the procurement of the Policy and Endorsement, including but not limited to: (i) its understanding of the Statement of No Loss and No-Loss Letter; (ii) whether Selective could issue prior acts coverage for abuse and molestation; (iii) the circumstances leading St. Catherine's to request the prior acts Endorsement from Selective; (iv) the advice provided to St. Catherine's by its insurance agent (R & K) relative to that issue; (v) when St. Catherine's was made aware of the gap in coverage resulting from its transition from a claims-made policy to an occurrence-based policy; (vi) what specific information Selective requested from St. Catherine's compared to what specific information was provided; and (vii) the business relationship between Selective and R & K. To the extent not specifically addressed previously, the Court concludes that the claimed factual disputes are not material to the determination of Selective's right to rescind the Endorsement on the basis of St. Catherine's material misrepresentations and/or have not been sufficiently established by the record.